WALTER R. CANNON, ESQ.
Nevada Bar No. 001505
OLSON, CANNON, GORMLEY
ANGULO & STOBERSKI
9950 W. Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012 - Telephone
(702) 383-0701 - Fax
wcannon@ocgas.com
Attorneys for Patricia Doninger

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MONICA CONTRERAS,<br><br>  Plaintiff,<br><br>vs.<br><br>RONALD D. FOX, JAMES KENYON, PATRICIA DONINGER, CLARK COUNTY, NEVADA, STATE OF NEVADA, ex rel., THE EIGHTH JUDICIAL DISTRICT COURT, DOES 1-10; and ROE ENTITIES 11-20, inclusive,<br><br>  Defendants. | CASE NO. 2:13-cv-00591-APG-PAL |

**DEFENDANT PATRICIA DONINGER'S MOTION TO DISMISS**

COMES NOW Defendant, Patricia Doninger, by and through her undersigned counsel, OLSON, CANNON, GORMLEY, ANGULO & STOBERSKI, and hereby respectfully submits this Motion to Dismiss the claims against her in the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

. . .

. . .

. . .

. . .

. . .

This Motion is made and based upon all the pleadings and papers on file herein, the attached Memorandum of Points and Authorities, in conjunction with such evidence and further authorities as the Court may require at the time this matter is considered.

Dated this 14th day of May, 2013.

> OLSON, CANNON, GORMLEY
> ANGULO & STOBERSKI
>
> By: /s/ Walter R. Cannon
> WALTER R. CANNON
> Nevada Bar No. 001505
> 9950 W. Cheyenne Avenue
> Las Vegas, Nevada 89129
> Attorneys for Defendant
> PATRICIA DONINGER

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

Plaintiff filed her Complaint on April 5, 2013 and asserted claims having federal jurisdiction pursuant to 28 U.S.C. §1331 and §1334 and 42 U.S.C. § 1983 (with supplemental jurisdiction with respect to the state law claims pursuant to 28 U.S.C. §1367). In so doing, Plaintiff sued this Moving Defendant Patricia Hearing, a Hearing Master for Family Court ("Hearing Master Doninger"), in her individual capacity. (Compl. ¶ 6). Plaintiff additionally named Family Court Marshals Ronald Fox and James Kenyon as Defendants in their individual capacities. (Compl. ¶¶ 4-5). Finally, Plaintiff named Defendants Clark County and the State of Nevada, through its Eighth Judicial District Court, as "co-employees" of Defendants Fox and Kenyon. (Compl. ¶¶ 6-7).

. . .

. . .

. . .

Plaintiff asserted 13 causes of action in her Complaint, four (4) of which are alleged against Hearing Master Doninger. The causes of action against Hearing Master Doninger are: violation of 4th and 14th Amendment right pursuant to 42 U.S.C. §1983 (First and Second Claims for Relief); supervisory liability pursuant to 42 U.S.C. §1983 (Third Claim for Relief); and negligent supervision under state law (Tenth Claim for Relief).

As set forth in detail below, each cause of action asserted against Hearing Master Doninger is barred by law pursuant to the doctrine of absolute immunity provided for the quasi-judicial acts which form the basis of Plaintiff's allegations against Hearing Master Doninger.

## II.

## FACTUAL BACKGROUND

This suit arises out of an incident occurring on August 8, 2011. At that time, Plaintiff appeared in Family Court with her young daughter for a hearing scheduled before Hearing Master Doninger. Plaintiff appeared as the adverse party in a requested extension of a protective order previously obtained by Plaintiff's husband for alleged violent acts committed by Plaintiff. Plaintiff's husband (the applicant) was not in attendance at the hearing. Because the applicant did not appear, Hearing Master Doninger denied the extension, dissolved the prior protective order, and concluded the hearing without incident.

According to Plaintiff's Complaint, as Plaintiff was leaving the courtroom following the hearing, she was approached by Defendant Marshal Fox who indicated Plaintiff needed to go to an anteroom of the courtroom for a drug search. (Compl. ¶ 12). While in the anteroom, Marshal Fox allegedly engaged in non-consensual improper sexual contact with Plaintiff's person and made sexually abusive and harassing requests. (Compl. ¶ 16). Plaintiff returned to the courtroom after Hearing Master Doninger had completed two other hearings. Plaintiff informed Hearing Master Doninger of Marshal Fox's alleged behavior in the anteroom. (Compl. ¶ 17). At this time, Defendant Marshal Kenyon (Marshal Fox's supervisor) was also in the courtroom. According to the Complaint, both Marshals then arrested Plaintiff, placed her in handcuffs,

. . .

. . .

issued her a criminal citation, and directed her to a holding cell in the Family Courthouse. (Compl. ¶ 19). Plaintiff's daughter was taken into custody by Child Protective Services until her father picked her up later that day. (Compl. ¶ 22).

Plaintiff's First Cause of Action alleges that Marshals Fox and Kenyon subjected Plaintiff to an unreasonable search and seizure in violation of her 4th Amendment rights. (Compl. ¶ 34). The cause of action further alleges that Hearing Master Doninger's "conscious disregard of Plaintiff's rights and failure to act" was a contributing cause of the unreasonable search and seizure in violation of her 4th Amendment rights. (Compl. ¶ 35). The Second Cause of Action maintains that Marshals Fox and Kenyon, and Hearing Master Doninger, deprived Plaintiff of a liberty interest "of familial relationship and society with her daughter" in violation of Plaintiff's 14th Amendment rights because Plaintiff's daughter was taken into custody by Child Protective Services during the time Plaintiff was detained. (Compl. ¶ 42).

Plaintiff's Third Cause of Action maintains that Hearing Master Doninger had supervisory authority and responsibility for the conduct of Marshals Fox and Kenyon and is, therefore, subject to supervisory liability (pursuant to 42 U.S.C. §1983) because she "knowingly failed to take actions" within such administrative supervisory which "would have prevented the alleged violations of Plaintiff's rights". (Compl. ¶¶ 48-49).

Finally, within her Tenth Cause of Action, Plaintiff alleges that Hearing Master Doninger is liable under a state law claim of negligent supervision. (Compl. ¶ 87). This final accusation is premised on the assertion that Hearing Master Doninger breached a duty owed to Plaintiff to supervise the conduct of Marshals Fox and Kenyon. (Compl. ¶ 86).

## II.

## LEGAL ARGUMENT

### A.  Standard of Review for a Motion to Dismiss

A motion to dismiss tests the legal sufficiency of the claims alleged in a complaint. A claim may be properly dismissed for a lack of cognizable legal theory, absence of sufficient facts alleged, or for seeking remedies to which a plaintiff is not entitled as a matter of law. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). According to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a clam that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly* at 556.

Although the court must take all the factual allegations in a complaint as true, it is not bound to accept as true a legal conclusion couched as a factual allegation. *Caviness v. Horizon Community Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010). Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim. *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th cir. 1996). Furthermore, "[t]he Court will not assume the truth of Plaintiff's legal conclusions merely because they are cast in the form of factual allegations in Plaintiff's Complaint." *Ritzer v. Gerovicap Pharmaceutical Corp*, 162 F.R.D. 642, 645 (D. Nev. 1995)(*citing Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981), *cert. denied*, 454 U.S. 1031 (1981)).

Plaintiff in this case has brought suit pursuant to 42 U.S.C. §1983. There are two elements to a §1983 claim against an individual: (1) the conduct complained of must have been under the color of state law; and (2) the conduct must have subjected the plaintiff to a deprivation of constitutional rights. *See Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984). "Conclusory allegations, unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act." *Id.* (*quoting Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977)). By the same token, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss . . . ." *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). In other words, dismissal of §1983 claims is always appropriate when the specific facts alleged simply fail to support a transgression of a constitutional magnitude or an act committed under color of state law.

. . .

Additionally, the Supreme Court has made clear that the issue of immunity should be determined as early as possible in the proceedings:

> [A] ruling on that issue should be made early in the proceedings so that costs and expenses of trial are avoided where the defense is dispositive. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Ibid*. As a result, "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)(per curiam).

*Saucier v. Katz*, 533 U.S. 194, 200-01 (2001)(emphasis in original); *see also State of Nevada v. Second Judicial District Court*, 118 Nev. 609, 615, 55 P.3d 420 (2002) ("Absolute immunity is a broad grant of immunity not just from the imposition of civil damages, but also from the burdens of litigation, generally.").

### B. Hearing Master Doninger Has Absolute Immunity for All Federal Claims Against Her in Her Individual Capacity.

Hearing Master Doninger is an appointed special master in the Eighth Judicial District Court, Family Court division, and presides over the issuance of temporary and extended protective orders against domestic violence. Her appointment is authorized pursuant to N.R.S. 53, "*Masters*", which provides that the District Court, in which any action is pending, may appoint a special master therein.[1] The statute was enacted to help alleviate the workload of district court judges. Similar to a district court judge, Hearing Master Doninger is assigned a courtroom within the Family Courthouse, she wears a robe while conducting hearings, and her courtroom is equipped with a court clerk and a marshal.

. . .

. . .

. . .

---

[1] The Constitution of the State of Nevada, Article 6, §6 (2)(a), provides: "The legislature may provide by law for referees in district court."

The extent to which a hearing master's duties mirror those of a judge is underscored in the Advisory Committee Notes for N.R.S. 53, subsection (c), "*Powers*", which provides:

> *The master may require the production before the master of evidence upon all matters embraced in the reference, including the production of all books, papers, vouchers, documents, and writings applicable thereto. The master may rule upon the admissibility of evidence unless otherwise directed by the order of reference and has the authority to put witnesses on oath and may examine them and may call the parties to the action and examine them upon oath. When a party so requests, the master shall make a record of the evidence offered and excluded in the same manner and subject to the same limitations as provided in Rule 43(c) and statutes for a court sitting without a jury.*

Hearing Master Doninger was appointed to aid the court in its judicial function of determining the propriety of issuing and extending protective orders in domestic violence matters. *See* Eighth Judicial District Court Rule 1.31(b)(3)(I). To this end, she performs a valuable and integral judicial function in assisting the court. Because Hearing Master Doninger was acting as an "arm of the court" and was performing "a function integral to the judicial process" during the actions complained of within Plaintiff's Complaint, she is shielded by the doctrine of absolute immunity in this matter. *See Lythgoe v. Guinn*, 884 P.2d 1085, 1086 (Alaska 1994).

It is a matter of well-established law that judges are generally immune from suits against them in their individual capacity. *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (applying judicial immunity to § 1983 actions); *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991). This absolute immunity is necessary based on the special nature of the judiciary's responsibilities. *See Butz v. Economou*, 438 U.S. 478, 511, 98 S.Ct. 2894 (1978). The public is best served when its judicial officers are free from fear of personal consequences for acts performed in their judicial capacity. *Greene v. Zank*, 158 Cal.App.3d 497, 508, 204 Cal.Rptr. 770 (1984).

Given these important public policy considerations, judges possess a "sweeping form of immunity" for all acts performed that relate to the "judicial process." *Forrester v. White*, 484 U.S. 219, 225, 108 S.Ct. 538 (1988); *Imbler v. Pachtman*, 424 U.S. 409, 423 n.20, 96 S.Ct. 984 (1976). Irrespective of the judge's subjective intent, immunity insulates the judge's actions except where done in the clear absence of jurisdiction. *See Stump v. Stackman*, 435 U.S. 349, 359

(1978). Put differently, this absolute immunity insulates judges from charges or erroneous acts or irregular action, even when it is alleged that such action was driven by malice, bad faith or corruption. *Forrester*, 484 U.S. at 227-28; *see also Mireles*, 502 U.S. at 11. Furthermore, the absolute immunity is not pierced by allegations of judicial authority "flawed by the commission of grave procedural errors." *Stump*, 435 U.S. at 359. In sum, "the judge is absolutely immune for all judicial acts not performed in the clear absence of all jurisdiction, however erroneous the act and however evil the motive." *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991).

The same purposes underlie the doctrine of quasi-judicial immunity, which precludes suit against persons who perform "functions normally performed by judges, such as court-appointed referees and experts." *Howard v. Drapkin*, 222 Cal.App.3d 843, 858, 271 Cal.Rptr. 893 (1990). In particular, court personnel "acting as either a temporary judge or performing subordinate judicial duties order by the appointing court" have been granted quasi-judicial immunity. *Tagliavia v. County of Los Angeles*, 112 Cal.App.3d. 759, 763, 169 Cal.Rptr. 467 (1980).[2]

The court in *Howard* summarized the purpose for shielding quasi-judicial acts with absolute immunity by holding:

> "*[w]e believe it appropriate that these 'nonjudicial persons who fulfill quasi-judicial functions intimately related to the judicial process' should be given absolute immunity for damage claims arising from their performance of duties in connection with the judicial process. Without such immunity, such persons will be reluctant to accept court appointments or provide work product for the courts' use. Additionally, the threat of civil liability may affect the manner in which they perform their jobs.*

*Howard*, at 858 (internal citations omitted).

Both Nevada and federal law are consistent with their broad application of the quasi-judicial immunity rule to all persons connected with the judicial process. In *Butz v. Economou*, 438 U.S. at 513, the court extended the application of absolute immunity to a federal

---

[2] *See also Taylor v. Mitzel*, 82 Cal.App.3d 665, 670-71, 147 Cal.Rptr. 323 (1978) (application of absolute immunity to claims against administrative law hearing officer); *Baar v. Tigerman*, 140 Cal.App.3d 979, 985, 211 Cal.Rptr. 713 (1983) (application of absolute immunity to claims against an arbitrator).

administrative hearings examiner because: "[t]he conflicts which federal hearing examiners seek to resolve are every bit as fractious as those which come to court... Moreover, federal administrative law requires that agency adjudication contain many of the same safeguards as are available in the judicial process." *Id.* The *Butz* court emphasized the similarity between the proceedings presided over by the hearings examiner and those presided over by a judge (*i.e.* the hearing examiner proceedings are adversary in nature, they are conducted before a trier of fact insulated from political influence, a party is entitled to present his case by oral or documentary evidence, there is a record of the proceedings, and the parties are entitled to know the findings and conclusions on all issues). *Id.* "There can be little doubt that the role of the modern federal hearing examiner or administrative law judge within this framework is 'functionally comparable' to that of a judge." *Id.*

According to the Ninth Circuit Court of Appeals, the determination of whether an individual is entitled to absolute immunity is founded on a "functional approach" which "looks to the nature of the function performed, not the identity of the [individual] who performed it." *Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir 1999) (*quoting Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). The "functional approach" takes into consideration factors including:

- whether the individual is performing many of the same functions as a judicial officer;

- whether there are procedural safeguards in place similar to a traditional court;

- whether the process or proceeding is adversarial;

- the ability to correct errors on appeal; and

- whether there are protective measures to ensure the constitutionality of the individual's conduct and to guard against political influences.

*Id.*

In the instant matter, Hearing Master Doninger presides over adversary matters involving the issuance and extension of domestic violence protective orders. She acts as the trier of fact and the parties are entitled to present evidence during the hearings (pursuant to the traditional

safeguards in place regarding the admission of evidence). Hearing Master Doninger's findings are reduced to a Recommendation which must be signed by a district court judge. Either party may file an objection to the Recommendation with the district court in an attempt to correct errors on appeal. Clearly, Hearing Master Doninger's role is "functionally comparable" to that of a judge.

In *Foster v. Washoe County*, 114 Nev. 936, 964 P.2d 788 (1998), the court dismissed the plaintiff's claims against employees of the Court Appointed Special Advocate ("CASA") under the doctrine of quasi-judicial immunity. The *Foster* court noted that the Nevada Attorney General specifically stated that CASA and its volunteers "may be considered an arm of the court." *Id.* at 793, *citing* 91-7 Op. Att'y Gen. 7 (1991). The court concluded: "CASA and its volunteers are entitled to the absolute immunity which extends to all persons who are an integral part of the judicial process." *Id.* (*citing Briscoe v. LaHue*, 460 U.S. 325, 335 (1983)).

The Nevada Supreme Court also applied the doctrine of quasi-judicial immunity to a court-appointed psychologist in *Duff v. Lewis*, 114 Nev. 564, 958 P.2d 82 (1998). In affirming the dismissal of the plaintiff's claims, the court held: "[t]he court-appointed psychologist performs a valuable and integral function in assisting courts in evaluating cases such as the one now before us." *Id.* at 87.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

Similarly, in *Briscoe v. LaHue*, 460 U.S. 325 (1983), the United States Supreme Court applied quasi-judicial immunity to dismiss a §1983 action against a police officer witness. The court held:

> *In short, the common law provided absolute immunity from subsequent damages liability **for all persons - governmental or otherwise - who were integral parts of the judicial process**. It is equally clear that §1983 does not authorize a damages claim against private witnesses on the one had, or against judges or prosecutors in the performance of their respective duties on the other.*

*Id.* at 335 (emphasis added).[3] The Ninth Circuit Court of Appeals held similarly in *Mishler v. Clift*, 191 F.3d 998, 1007 (9th Cir. 1999) by concluding that individual members of the Nevada Board of Medical Examiners were entitled to absolute immunity for their quasi-judicial acts.[4]

In the instant case, Plaintiff alleges Hearing Master Doninger improvidently failed to exercise her judicial duty and intervene in Plaintiff's arrest. The bare allegations of Plaintiff's Complaint alone result in the application of judicial immunity as the entirety of Plaintiff's allegations arise from events occurring in Hearing Master Doninger's courtroom while she was acting in her official capacity. This is plainly a case where immunity attaches and dismissal of Plaintiff's First, Second, and Third Causes of Action against Hearing Master Doninger is warranted.

. . .

---

[3] *See also Marvin v. Fitch*, 232 P.3d 425, 126, Nev. Adv. Op. 18 (2010) wherein the Nevada Supreme Court dismissed the plaintiff's §1983 civil rights claim against members of the State Board of Equalization based upon application of the doctrine of absolute immunity and a finding that the Board member's actions constituted quasi-judicial functions.

[4] Absolute immunity for activities intimately associated with the judicial process has been widely adopted in other Circuits as well. *See Frazier v. Bailey*, 957 F.2d 920, 931 (1st Cir. 1992) (public officers possess absolute immunity quasi-judicial activities); *Gardner v. Parson*, 874 F.2d 131 (3rd Cir. 1989) (absolute immunity applies when conduct is an integral part of the judicial process); *Vosburg v. Dept. of Social Services*, 884 F.2d 133, 135 (4th Cir. 1989) (absolute immunity applies to "preparing and filing the removal petition as well as their conduct in caring for [child] once the court had awarded custody of the child to DSS"); and *Millspaugh v. County Dept. of Public Welfare*, 937 F.2d 1172 (7th Cir. 1991), *cert. denied* 502 U.S. 1004 (1991) (absolute immunity for social worker's acts relating to judicial protection proceeding).

### C. Nevada Recognizes Absolute Judicial Immunity for the State Law Claims Pled Against Hearing Master Doninger.

Hearing Master Doninger is also immune from all state causes of action by virtue of the doctrine of absolute judicial immunity. "[T]he doctrine of judicial immunity arose out of the common law to protect the integrity and smooth operation of the judicial systems, both State and Federal." *Mirin v. Justice of the Supreme Court of Nevada*, 415 F. Supp. 1178, 1190 (D. Nev. 1976). The Nevada Supreme Court has held its state-court judges have immunity from state law claims just as they do for federal causes of action. In *State v. Second Judicial District Court*, 118 Nev. 609, 55 P.3d 420 (2003), the Court stated:

> Absolute immunity is a broad grant of immunity not just from the imposition of civil damages, but also from the burdens of litigation, generally. Judicial immunity originates from the common-law protection of judicial participants which formed a "'cluster of immunities protecting the various participants in judge-supervised trials'" that stemmed "'from the characteristics of the judicial process.'" . . . Indeed, a grant of absolute immunity applies even when a judicial officer has been accused of acting maliciously and corruptly.

*Id.* at 615, 55 P.3d at 423-24 (internal citations omitted).

As such, the same immunity attaches to Hearing Master Doninger's alleged conduct regardless of whether Plaintiff casts these allegations in the form of federal causes of action or state causes of action. The Tenth Cause of Action entitled "negligent supervision" is legally deficient for the same reasons the §1983 civil rights causes of action. Dismissal is thus warranted for any claims asserted under supplemental jurisdiction against Hearing Master Doninger.

. . .

. . .

. . .

. . .

. . .

. . .

## III.

## CONCLUSION

IN ACCORDANCE WITH THE FOREGOING, Defendant Patricia Doninger respectfully moves for dismissal of all Plaintiff's claims made against her in Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

RESPECTFULLY SUBMITTED this 14th day of May, 2013.

        OLSON, CANNON, GORMLEY
        ANGULO & STOBERSKI

By: /s/ Walter R. Cannon
    WALTER R. CANNON
    Nevada Bar No. 001505
    9950 W. Cheyenne Avenue
    Las Vegas, Nevada 89129
    Attorneys for Defendant
    PATRICIA DONINGER

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 14th day of May, 2013, I served the above **DEFENDANT PATRICIA DONINGER'S MOTION TO DISMISS** through the CM/ECF system of the United States District Court for the District of Nevada (or, if necessary, by U.S. Mail, first class, postage pre-paid), upon the following:

> Ross C. Goodman, Esq.
> Goodman Law Group, P.C.
> 520 So. Fourth Street, 2nd Floor
> Las Vegas, Nevada 89101
> Attorney for Plaintiff
>
> Eva Garcia-Mendoza, Esq.
> 501 South Seventh Street
> Las Vegas, Nevada 89101
> Attorney for Defendant Ronald D. Fox
>
> Lyssa S. Anderson, Esq.
> Kaempfer Crowell Renshaw Gronauer & Fiorentino
> 8345 W. Sunset Road, Suite 250
> Las Vegas, Nevada 89113
> Attorney for Defendant James Kenyon
>
> Robert W. Freeman, Esq.
> Lewis Brisbois Bisgaard & Smith, LLP
> 6385 W. Rainbow Blvd., #600
> Las Vegas, Nevada 89118
> Attorney for Defendant Clark County

. . .

. . .

. . .

. . .

C. Wayne Howle, Esq.
Nevada Attorney General's Office
100 North Carson Street
Carson City, Nevada 89701-4717
Attorney for Defendant State of Nevada

/s/  Nanette D. Langenderfer
An Employee of OLSON, CANNON, GORMLEY
ANGULO & STOBERSKI