WALTER R. CANNON, ESQ.
Nevada Bar No. 001505
OLSON, CANNON, GORMLEY
ANGULO & STOBERSKI
9950 W. Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012 - Telephone
(702) 383-0701 - Fax
wcannon@ocgas.com
Attorneys for Patricia Doninger

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MONICA CONTRERAS,<br><br>Plaintiff,<br><br>vs.<br><br>RONALD D. FOX, JAMES KENYON, PATRICIA DONINGER, CLARK COUNTY, NEVADA, STATE OF NEVADA, ex rel., THE EIGHTH JUDICIAL DISTRICT COURT, DOES 1-10; and ROE ENTITIES 11-20, inclusive,<br><br>Defendants. | CASE NO. 2:13-cv-00591-APG-PAL |

### DEFENDANT PATRICIA DONINGER'S REPLY IN SUPPORT OF MOTION TO DISMISS

COMES NOW Defendant, Patricia Doninger, by and through her undersigned counsel, OLSON, CANNON, GORMLEY, ANGULO & STOBERSKI, and files the instant Reply Points and Authorities in Support of her Motion to Dismiss the claims against her in the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) based on Plaintiff's failure to state a claim upon which relief can be granted.

. . .

. . .

. . .

## POINTS AND AUTHORITIES

### I. Introduction

The allegations set forth in Plaintiff's Complaint against Defendant Patricia Doninger, a Hearing Master for Family Court ("Hearing Master Doninger"), fail to state a claim upon which relief can be granted. Specifically, the allegations are barred by the doctrine of absolute judicial immunity. The entirety of the claims against Hearing Master Doninger stem from alleged actions (and inactions) taken in her capacity as a hearing master which are judicial or quasi-judicial functions. Because a judge, and those acting to perform duties directly related to the judicial function, are protected by absolute judicial immunity, no federal claims may be stated on the facts set forth in Plaintiff's Complaint against Hearing Master Doninger. Further, similar absolute judicial immunity under Nevada state law bars Plaintiff's state law claim against Hearing Master Doninger.[1]

### II. Legal Argument

Plaintiff asserted four (4) allegations within her Complaint against Hearing Master Doninger: violation of her 4th and 14th Amendment rights pursuant to 42 U.S.C. §1983; supervisory liability pursuant to 42 U.S.C. §1983; and negligent supervision under state law. Each allegation stems from August 8, 2011 when Plaintiff was appearing before Hearing Master Doninger as a litigant during a hearing for extension of a temporary restraining order. After Plaintiff, after she left the courtroom at the conclusion of the hearing, she was approached by Defendant Marshal Fox who allegedly engaged in non-consensual, improper sexual contact with her while conducting a drug search in an anteroom of the courtroom. (Compl. ¶¶ 12-16). Plaintiff returned to Hearing Master Doninger's courtroom and informed her of Defendant Fox's alleged behavior. (Compl. ¶ 17). At this time, Defendant Marshal Kenyon (Marshal Fox's supervisor) was also in the courtroom. According to the Complaint, both marshals then arrested Plaintiff for providing a false statement to the Court. (Compl. ¶ 19).

There are no allegations Hearing Master Doninger was involved in the drug search of

---

[1] In addition, negligent supervision claims are barred by N.R.S. § 41.032, discretionary immunity. *See Neal-Lomas v. LVMPD*, 574 F.Supp.2d 1170, 1192 (D.Nev. 2008).

Plaintiff which occurred outside the courtroom. Further, no allegations exist that Hearing Master Doninger knew, or had reason to know, whether the basis for Defendants Fox and Kenyon's arrest of Plaintiff was legitimate (*i.e.* whether the statement provided by Plaintiff regarding Marshal Fox's conduct was, indeed, false). Instead, Plaintiff maintains Hearing Master Doninger's culpability lies in a failure to act at the time of Plaintiff's arrest. More particularly, Plaintiff asserts that Hearing Master Doninger engaged in a "conscious disregard of Plaintiff's rights" by failing to intervene and stop the alleged unreasonable search and seizure committed by Defendants Fox and Kenyon (4th Amendment violation) which eventually led to an alleged deprivation of Plaintiff's liberty interest in the familial relationship with Plaintiff's daughter (14th Amendment violation)[2]. (Compl. ¶¶ 35 and 42). Plaintiff further alleges Hearing Master Doninger "knowingly failed to take actions" - - within an incorrectly presumed administrative/supervisory capacity - - which "would have prevented the alleged violations of Plaintiff's rights". (Compl. ¶¶ 48-49).[3] Plaintiff's incorrect presumption that Hearing Master Doninger has supervisory control over the marshals appearing in her courtroom also forms the basis for Plaintiff's state law claim of negligent supervision. (Compl. ¶ 87).

### A. Plaintiff Has Established No Basis to Preclude Application of Absolute Immunity for all Federal Claims Asserted Against Hearing Master Doninger

Judicial immunity has been recognized in the common law since 1872. Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction. *Bradley v. Wall*, 13 Wall. 335, 20

---

[2] Plaintiff's daughter, who accompanied Plaintiff to court the day of the subject incident, was taken into custody by Child Protective Services during the time Plaintiff was detained. (Compl. ¶ 22).

[3] Plaintiff maintains Hearing Master Doninger had an "administrative duty to supervise the conduct of the court staff, including the marshals." (Compl. ¶ 26). Defendant denies this allegation. However, the instant Motion seeks dismissal under F.R.C.P. 12(b)(6), which mandates the Court accept all factual allegations in Plaintiff's Complaint as true. As set forth in detail herein, whether Hearing Master Doninger had a right to exercise administrative control over the marshals appearing in her courtroom is of no moment to a determination of the instant Motion. The specific actions alleged by Plaintiff are *judicial* in nature, not administrative, and absolute immunity bars recovery against Hearing Master Doninger stemming from the same.

L.Ed. 646 (1872). Judicial immunity is an immunity from suit, not just from ultimate assessment of damages. Accordingly, this absolute immunity insulates judges from charges of erroneous acts or irregular action, even when it is alleged that such action was driven by malice, bad faith or corruption. *Forrester v. White*, 484 U.S. 219, 227-28 (1988).

Plaintiff, in opposition, does not argue Hearing Master Doninger's role in the instant matter is functionally comparable to that of a judge for purposes of judicial immunity. She presides over adversary matters involving the issuance and extension of domestic violence protective orders. She acts as the trier of fact and the parties are entitled to present evidence during the hearings (pursuant to the traditional safeguards in place regarding the admission of evidence). Hearing Master Doninger's findings are reduced to a Recommendation which must be signed by a district court judge. Either party may file an objection to the Recommendation with the district court in an attempt to correct errors on appeal. She acts as an integral part of the judicial process and performs a valuable function in assisting the courts with evaluation and determination of restraining order matters. While acting in this capacity, Hearing Master Doninger is entitled to judicial immunity. *See Duff v. Lewis*, 114 Nev. 564, 958 P.2d 82 (1998).

Judicial immunity is overcome in only two sets of circumstances: (1) a judge is not immune from liability for non-judicial actions (*i.e.* actions not taken in the judge's judicial capacity); and (2) a judge is not immune for actions, though judicial in nature, taken in a complete absence of all jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). In her Opposition, Plaintiff does **not** oppose application of absolute immunity on the grounds Hearing Master Doninger's actions were taken in complete absence of all jurisdiction. She does **not** oppose the fact Hearing Master Doninger was acting as an arm of the court and was performing a judicial function. Her sole challenge to absolute immunity rests on the argument these alleged actions were administrative, as opposed to judicial, in nature. She is incorrect.

Plaintiff cites *Forrester* and *Antoine v. Byers & Anderson*, 508 U.S. 429 (1993) for the proposition that judicial immunity does not apply to administrative actions. Unfortunately, Plaintiff fails to provide the Court with any analysis which applies the holdings of those cases to the instant facts. The reason for such failure is clear: the administrative action at issue in both

cases bears no similarity to the actions of Hearing Master Doninger. In *Forrester*, the court refused to grant absolute immunity to a judge for allegations that he demoted and discharged an employee on account of her sex in violation of the Equal Protection Clause of the 14th Amendment. The *Forrester* court held the judge's personnel decision to demote and discharge the former employee was administrative rather than judicial in nature. 484 U.S. at 220. In *Antoine*, the court held the defendant court reporters were not entitled to absolute immunity for an alleged failure to provide complete transcripts of a criminal proceeding. The court stated: "In short, court reporters do not exercise the kind of judgment that is protected by the doctrine of judicial immunity." 508 U.S. at 437.

Conversely, the record clearly establishes the entirely of Plaintiff's allegations against Hearing Master Doninger rest in actions (or inactions) taken in Hearing Master Doninger's quasi-judicial capacity. The determination of whether a function is "judicial" for purposes of immunity includes two factors: (1) whether the function is one normally performed by a judge; and (2) whether the parties dealt with the judge in his or her judicial capacity. *Stump*, 435 U.S. at 357. The complained-of actions against Hearing Master Doninger fulfill both factors. First, Plaintiff only dealt with Hearing Master Doninger in her judicial capacity. At all times relevant, Plaintiff was a <u>litigant</u> appearing before Hearing Master Doninger within her assigned courtroom. Indeed, the precise action Plaintiff alleges should have occurred, *i.e.* that Hearing Master Doninger should have intervened during Plaintiff's arrest, could have only been undertaken in her judicial capacity. Plaintiff is not an employee or co-worker of Hearing Master Doninger and the allegations against Hearing Master Doninger cannot be deemed to involve personnel or "administrative" issues. All interaction between Plaintiff and Hearing Master Doninger occurred as between a litigant and a judge.

Second, the acts at issue in this matter are those normally performed by a judge. In *Chrzanowski v. Assad*, Case No.: 2:05-cv-00418-RLH-PAL (Document 25) Judge Hunt held the defendant Judge George Assad was entitled to judicial immunity for allegations that he wrongfully held a defendant's girlfriend in custody in an effort to pressure the boyfriend to appear in his court. (*Order*, attached hereto as Exhibit "A"). Although the girlfriend was not the

defendant and was not part of the criminal action, Judge Hunt determined that judicial immunity applied because the act of ordering someone in custody was judicial in nature (the act took place in Judge Assad's courtroom, the order arose from a pending case, and the order derived from a confrontation with the judge in his official capacity). *Id.*[4] The Ninth Circuit held similarly in *Crooks v. Maynard*, 913 F.3d 699 (9th Cir. 1990) wherein it stated a judge was entitled to judicial immunity for the issuance of a contempt citation against a clerk of court and deputy clerk. The *Crooks* court rejected the plaintiffs' argument that the act at issue was administrative (as opposed to judicial) in nature, holding alternatively that the act was not a "personnel action" because the judge did not hire or fire the plaintiffs and was only exercising his judicial power. *Id.* at 700.

Actions taken by a judge in an effort to control his/her courtroom are consistently interpreted as judicial functions, thus entitling the judge to absolute immunity. *Mireles v. Waco*, 502 U.S. 9 (1991)(concluding that judge was immune from liability for allegedly authorizing police officers to use excessive force to hale an attorney into his courtroom); *Ashelman v. Pope*, 793 F.2d 1072 (9th Cir.1986) (extending absolute judicial immunity to a judge who allegedly conspired with a prosecutor to predetermine the outcome of a proceeding); *King v. Myers*, 973 F.2d 354 (4th Cir.1992) (holding that magistrate judge was absolutely immune from civil liability for directing a police officer to effect warrantless arrest); *Green v. Maraio*, 722 F.2d 1013 (2d Cir.1983) (recognizing immunity where a judge instructed a court reporter to alter a trial transcript); *Sheppard v. Maxwell*, 384 U.S. 333 (1966)(a judge acts in a judicial capacity when exercising control of the judge's courtroom); *Cameron v. Seitz*, 38 F.3d 264, 271 (6th Cir.1994)(state probate court judge's actions of not taking probate court employee's recommendations on disposition of juvenile cases, and barring employee's admittance into court were judicial acts and therefore subject to immunity despite the employee's allegations the judge made his decisions out of hostility arising from the employee's marriage to the judge's secretary).

Because a judge is immune from suit for ordering a litigant to be taken into custody, the converse must also be true: a judge is immune from suit for an alleged failure to *stop* someone

---

[4] This decision was affirmed in an unpublished decision by the Ninth Circuit Court of Appeals. 2008 WL 1829784 (9th Cir. 2008); 275 Fed.Appx. 661 (C.A.9 (Nev.)).

from being taken into custody, which is precisely the allegation against Hearing Master Doninger. Plaintiff may disagree with the judicial discretion exercised by Hearing Master Doninger, however, application of immunity is **not** dependent on the accuracy of the decision. Absolute immunity insulates judges from charges of erroneous acts or irregular action even when it is alleged that such action was driven by malice, bad faith or corruption. *Forrester*, 484 U.S. at 227-28. Furthermore, the absolute immunity is not pierced by allegations of judicial authority "flawed by the commission of grave procedural errors." *Stump*, 435 U.S. at 359.

In the instant case, Plaintiff's allegations against Hearing Master Doninger fall squarely in the ambit of the protection of absolute judicial immunity. The entirety of the allegations arise from events that occurred in Hearing Master Doninger's courtroom while she was acting in her official capacity. This is plainly a case where immunity attaches and dismissal of Plaintiff's allegations against Hearing Master Doninger is warranted.

### B. Hearing Master Doninger is Also Entitled to Judicial Immunity for Plaintiff's State Law Claims

Hearing Master Doninger is also immune from Plaintiff's state law cause of action for negligent supervision. According to the Nevada Supreme Court in *State v. Second Judicial District Court*, 118 Nev. 609, 615, 55 P.3d 420 (2003), state-court judges have immunity from state law claims just as they do for federal causes of action. Plaintiff does not separately oppose Hearing Master Doninger's right to judicial immunity from suit for the pending state law claim of negligent supervision.

Absolute judicial immunity attaches to Hearing Master Doninger's alleged conduct regardless of whether Plaintiff files suit under federal law claims or state law claims. Plaintiff's "negligent supervision" claim is legally deficient for the same reasons set forth above for the §1983 civil rights causes of action. Dismissal is thus warranted for any claims asserted under supplemental jurisdiction against Hearing Master Doninger.

### CONCLUSION

Based on the foregoing, Defendant Patricia Doninger respectfully requests that the entirely of Plaintiff's claims made against her in Plaintiff's Complaint be dismissed pursuant to

. . .

Federal Rule of Civil Procedure 12(b)(6).

RESPECTFULLY SUBMITTED this 8th day of July, 2013.

          OLSON, CANNON, GORMLEY
          ANGULO & STOBERSKI

          By: /s/ Walter R. Cannon
               WALTER R. CANNON
               Nevada Bar No. 001505
               9950 W. Cheyenne Avenue
               Las Vegas, Nevada 89129
               Attorneys for Defendant
               PATRICIA DONINGER

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 8th day of July, 2013, I served the above **DEFENDANT PATRICIA DONINGER'S REPLY IN SUPPORT OF MOTION TO DISMISS** through the CM/ECF system of the United States District Court for the District of Nevada (or, if necessary, by U.S. Mail, first class, postage pre-paid), upon the following:

> Ross C. Goodman, Esq.
> Goodman Law Group, P.C.
> 520 So. Fourth Street, 2nd Floor
> Las Vegas, Nevada 89101
> Attorney for Plaintiff
>
> Eva Garcia-Mendoza, Esq.
> 501 South Seventh Street
> Las Vegas, Nevada 89101
> Attorney for Defendant Ronald D. Fox
>
> Lyssa S. Anderson, Esq.
> Kaempfer Crowell Renshaw Gronauer & Fiorentino
> 8345 W. Sunset Road, Suite 250
> Las Vegas, Nevada 89113
> Attorney for Defendant James Kenyon
>
> Robert W. Freeman, Esq.
> Lewis Brisbois Bisgaard & Smith, LLP
> 6385 W. Rainbow Blvd., #600
> Las Vegas, Nevada 89118
> Attorney for Defendant Clark County
>
> C. Wayne Howle, Esq.
> Nevada Attorney General's Office
> 100 North Carson Street
> Carson City, Nevada 89701-4717
> Attorney for Defendant State of Nevada

/s/ Nanette D. Langenderfer
An Employee of OLSON, CANNON, GORMLEY ANGULO & STOBERSKI

# EXHIBIT A

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ANN CHRZANOWSKI, | Case No.: CV-S-05-0418-RLH (PAL) |
| Plaintiff, | **O R D E R** |
| vs. | (Motion to Dismiss–#5 |
| JUDGE GEORGE ASSAD, et al., | Motion to File Amicus Curie Brief–#7 |
| | Motion to Dismiss–#10 |
| Defendants. | Motion to Dismiss–#11) |

  Before the Court is Defendant Judge George Assad' **Motion to Dismiss** (#5), filed July 21, 2005. The Court has also considered Plaintiff's Opposition (#8), filed August 12, 2005, and Defendant Judge George Assad's Reply (#12), filed August 29, 2005.

  Also before the Court is American Civil Liberties Union of Nevada's (ACLUN) **Request to File Amicus Curie Brief in Support of Plaintiff** (#7), filed August 12, 2005.

  Also before the Court is Defendant Saavedera's **Motion to Dismiss** (#10), filed August 22, 2005. The Court has also considered Plaintiff's Opposition (#15), filed September 16, 2005, and Defendant Saavedera's Reply (#18), filed September 29, 2005.

  Also before the Court is Defendant City of Las Vegas' **Motion to Dismiss** (#11), filed August 23, 2005. The Court has also considered Plaintiff's Opposition (#17), filed September 26, 2005, and Defendant City of Las Vegas' Reply (#19), filed October 21, 2005.

1

AO 72
(Rev. 8/82)

1  The Court has also taken under consideration those arguments presented by counsel at the hearing on Defendants' Motions to Dismiss, held February 13, 2006.

## BACKGROUND

On March 31, 2003, Plaintiff alleges she appeared on behalf of her boyfriend, Josh Madera, to request a continuance on a traffic citation pending before Judge Assad. Plaintiff alleges she informed the judge that Mr. Madera could not be present because he was starting a new job. Plaintiff alleges Judge Assad informed her that her boyfriend had called earlier and had threatened a Municipal Court employee with bodily harm. Plaintiff alleges Judge Assad "then told the Plaintiff that she would be held in custody until Mr. Madera came to Court." Plaintiff alleges that Marshal Saavedera handcuffed her and detained her for two hours. Marshal Saavedera had Plaintiff call Mr. Madera. The Marshal told Mr. Madera he had better get down to court. Plaintiff alleges she was held in custody from approximately 3:30 p.m. until 5:45 p.m. and was unable to call and inform her employer concerning her predicament.

On March 25, 2005, Plaintiff filed his Civil Rights complaint in federal court against Judge George Assad, City Marshal R. S. Saavedera, and the City of Las Vegas, alleging the following claims: (1) conspiracy under 42 U.S.C. Section 1983, (2) Section 1983 violations, and (3) various pendant tort claims, including assault, battery, false imprisonment, false arrest, civil extortion, and negligent hiring and supervision.

## DISCUSSION

### I. Legal Standard for Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Yamaguchi v. U.S. Dept. of the Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997). All factual allegations set forth in the complaint "are taken as true and

construed in the light most favorable to [p]laintiffs." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1999). Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).

**II. 42 U.S.C. § 1983**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of law." *West v. Atkins*, 487 U.S. 42, 48-49 (1988). Liability under § 1983 may be imposed on local governments only when their policies or customs cause their employees to violate another's constitutional rights. *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978).

Where a Plaintiff has stated a valid cause of action under § 1983, "[g]overnment officials sued in their individual capacities under § 1983 may raise the affirmative defense of qualified or absolute immunity. Qualified immunity generally protects government officials in the course of performing the discretionary duties of their offices." *Butler v. Elle*, 281 F.3d 1014, 1021 (9th Cir. 2002) (citing to *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

**III. Defendant Judge George Assad's Motion to Dismiss**

Judges possess a "sweeping form of immunity" for all acts performed that relate to the "judicial process." *Forrester v. White*, 484 U.S. 219, 225 (1988). "'A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority . . . .'" *Sadoski v. Mosley*, - - - F.3d - - -, 2006 WL 163316, at *2 (9th Cir. 2006) (citation omitted). A judge, however, forfeits his immunity when he acts in "clear absence of all jurisdiction." *Mullis v. U.S. Bankruptcy Court for the District of Nevada*, 828 F.2d 1385, 1389 (9th Cir. 1987). The Ninth Circuit has outlined the following four factors to determine whether a particular act is judicial in nature and thus subject to immunity: (1) whether the precise

3

act is a normal judicial function; (2) whether the events occurred in the judge's chambers; (3) whether the controversy centered around the case then pending before the judge; (4) whether the events at issue arose directly and immediately out of a confrontation with the judge in his or her official capacity. *Meeks v. County of Riverside*, 183 F.3d 962, 967 (9th Cir. 1999). Furthermore, the doctrine of judicial immunity applies to both the State and Federal judicial systems. *Mirin v. Justice of the Supreme Court of Nevada*, 415 F. Supp. 1178, 1190 (D. Nev. 1976); *State v. Second Judicial Dist. Court*, 55 P.3d 420, 423-424 (Nev. 2003) (Nevada Supreme Court recognizing common law doctrine judicial immunity).

Defendant Judge George Assad argues that all the claims against him in his individual capacity[1] should be dismissed for failure to state a claim because absolute immunity precludes the federal and state claims. Defendant Judge George Assad argues that: (1) the act of taking an individual into custody due to contempt is a judicial function; (2) the event occurred inside the courtroom while court was in session; (3) Plaintiff placed herself at issue in a case pending before Judge Assad; and (4) the allegations arise out of a confrontation between Plaintiff and Judge Assad while he was sitting on the bench acting in his official capacity. Defendant Judge George Assad argues that any alleged conspiratorial objectives do not undermine absolute immunity. *See Moore v. Brewster*, 96 F.3d 1240, 1244 (9th Cir. 1996), *cert. denied*, 519 U.S. 118 (1997).

Plaintiff argues that absolute immunity does not apply because Defendant Judge George Assad was acting in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349 (1978); *Schucker v. Rockwood*, 846 F.2d 1202, 1204 (9th Cir.1988) ("A judge loses absolute immunity only when he acts in the clear absence of all jurisdiction or performs an act that is not judicial in nature"). Plaintiff argues that Defendant Judge George Assad had no jurisdiction over her because she was not a defendant in the case before him, was not in contempt of court, nor was

---

[1] Plaintiff concedes that Defendant Judge George Assad has Eleventh Amendment immunity in his official capacity.

1  she disruptive. Plaintiff argues that Defendant Judge George Assad was trying to punish the
2  alleged telephone threats of Mr. Madera. Plaintiff further argues that Defendant Judge George
3  Assad was not acting in a judicial capacity but in an administrative capacity enforcing the rules of
4  decorum and etiquette.

5  The Court finds Plaintiff's arguments unavailing. The act of placing someone in
6  custody is indisputably a normal judicial function. Further, Plaintiff presented herself in lieu of
7  her boyfriend in front of Defendant Judge George Assad in his courtroom for the purpose of a
8  judicial proceeding then pending before Defendant Judge George Assad, thereby placing herself in
9  the jurisdiction of the court. Even assuming that Defendant Judge George Assad acted in excess
10 of his authority by holding Plaintiff in custody for the alleged acts of her boyfriend, absolute
11 immunity is not defeated. *Sadoski*, 2006 WL 163316, at *2 (judge acting in excess of authority
12 not deprived of immunity). Accordingly, Defendant Judge George Assad's Motion to Dismiss will
13 be granted.

### V. ACLU of Nevada's Request to File Amicus Curie Brief

15 ACLUN requests that it be permitted to file an amicus curie brief in support of
16 Plaintiff. The Court will grant the request.

### V. Defendant Saavedera's Motion to Dismiss

18 A municipal court officer who acts at the direction of a judge to whom he or she is
19 immediately and directly responsible, is entitled to quasi-judicial immunity. *Gillibeau v. City of*
20 *Richmond*, 417 F.2d 426, 429 (9th Cir. 1969).

21 Defendant Saavedera argues that he is entitled to absolute quasi-judicial immunity
22 because as a Marshal he was carrying out the municipal judge's directives, and thus all federal and
23 state claims against him in his individual capacity should be dismissed. Defendant Saavedera also
24 argues that any official capacity claims against him should be dismissed as redundant since an
25 official capacity claim is the same as a claim against the City of Las Vegas, which has also been
26 named as a defendant in the present suit.

Plaintiff argues that Defendant Saavedera is not immune because neither Defendant Judge George Assad nor Defendant Saavedera had a right to handcuff Plaintiff and lock her in a cell for over two hours. Plaintiff further argues for the first time that Defendant Judge George Assad has subsequently asserted that he never intended Plaintiff to be handcuffed and placed in a cell.

Taking as true the factual allegations contained in the complaint, the Court finds that Defendant Saavedera was acting within his capacity as a Marshal by handcuffing and taking Plaintiff to a holding cell in compliance with the judge's order to hold Plaintiff in "custody until Mr. Madera came to Court." The Court notes that Plaintiff does not dispute that a Marshal is acting within his capacity when, pursuant to a court order, he takes an individual into custody by handcuffing and placing that individual in a holding cell. Rather, Plaintiff contends that such action was unwarranted and unnecessary in this case. That contention alone, however, is insufficient to preclude the application of quasi-judicial immunity. Therefore, in light of our decision above that Defendant Judge George Assad is entitled to absolute judicial immunity, Defendant Saavedera is also entitled to the protection of quasi-judicial immunity for carrying out the judge's orders in his capacity as a Marshal. Accordingly, Defendant Saavedera's Motion to Dismiss will be granted.

**VI. Defendant City of Las Vegas' Motion to Dismiss**

Defendant City of Las Vegas argues that the Section 1983 claims against it should be dismissed because Plaintiff has failed to allege a constitutional violation. Plaintiff's claims against Defendant City of Las Vegas are based on an alleged failure to investigate complaints against Court Marshals and failure to supervise and train Court Marshals. However, Defendant City of Las Vegas argues that in this instance the Court Marshal, Defendant Saavedera, was acting at the direction of a Municipal Judge, Defendant Judge George Assad. Defendant City of Las Vegas thus argues that Plaintiff has failed to allege a constitutional violation because it is not required to instruct Marshals to ignore their basic duty of following the orders of the presiding

1  judge. Plaintiff claims, however, that Defendant City of Las Vegas' is liable under Section 1983
2  for its policy of allowing its Marshals to retaliate against "adversaries" of the department.
3        The Court finds that Plaintiff has failed to identify any inferred or informal policies,
4  procedures, or customs promulgated by Defendant City of Las Vegas that caused its court officers
5  to violate the Plaintiff's constitutional rights. To the extent that Plaintiff assert that Defendant
6  Saavedera's actions themselves illustrate a policy of constitutional violation, the Court notes that
7  (1) there is no respondeat superior liability under § 1983, *See Monell*, 436 U.S. at 691; and (2) a
8  Plaintiff cannot establish the existence of a policy, procedure, or custom on the basis of a single
9  incident involving non-policymaking employees, *See Nadell v. Las Vegas Metro. Police Dept.*,
10  268 F.3d 924, 929 (9th Cir. 2001). Accordingly, Plaintiff has failed to provide any evidence that
11  Defendant City of Las Vegas employs an informal policy, procedure, or custom that caused its
12  court officers to violate the constitutional rights of Plaintiff, and therefore, the Section 1983 claim
13  against it will be dismissed.
14        Plaintiff further argues that Defendant City of Las Vegas is liable under respondeat
15  superior for the state law claims alleged against Defendant Saavedera in his official capacity. The
16  Court notes, however, that it has dismissed all of the Section 1983 claims brought against
17  Defendants. Accordingly, the Court declines pendant jurisdiction and dismisses the state law
18  claims asserted against Defendant City of Las Vegas without prejudice.

### CONCLUSION

20  Accordingly, and for good cause appearing,
21  IT IS HEREBY ORDERED that Defendant Judge George Assad' **Motion to**
22  **Dismiss** (#5) is GRANTED.
23  IT IS FURTHER ORDERED that ACLU of Nevada's (ACLUN) **Request to File**
24  **and Amicus Curie Brief in Support of Plaintiff** (#7) is GRANTED.
25  IT IS FURTHER ORDERED that Defendant Saavedera's **Motion to Dismiss** (#10)
26  is GRANTED.

1  IT IS FURTHER ORDERED that Defendant City of Las Vegas' **Motion to Dismiss** (#11) is GRANTED in part and DENIED in part as follows:

1. the Motion is granted as to the Section 1983 claims against Defendant City of Las Vegas, and

2. the Motion is denied as to the state law claims. Instead, the Court declines pendant jurisdiction over Plaintiff's state law claims and dismisses those claims without prejudice.

Dated: February 13, 2006.

_____
ROGER L. HUNT
United States District Judge