EXHIBIT "2"

Complaint Investigation
IA#045-2011
Page 1 of 71

# CLARK COUNTY COURTS MARSHALS DIVISION
## ~~INTERNAL AFFAIRS COMPLAINT~~
## INVESTIGATION REPORT
### IA# 045-2011

May 21, 2012

## Summary of Investigation/Alleged Misconduct

According to the Complainant Monica Contreras on August 8, 2011 at approximately 1600 hours, Deputy Marshal Ronald Fox P#241, while on duty, in uniform, inappropriately touched her person while she was at the Family Court. It is further alleged Deputy Marshal Ronald Fox attempted to conduct a second search of the Complainant and when the Complainant refused to comply and apprised a member of the judiciary of his conduct, the Complainant was arrested, given a citation and the custody of her minor child was remanded to Clark County Child Protective Services (CPS).

**The incident was reported to the Clark County Courts Marshals Division (CCCMD), Internal Affairs Sergeant Dana Saunders P#207 on October 25, 2011 at approximately 1400 hours at the Regional Justice Center.**

The Clark County Courts Marshals Division alleges that Deputy Marshal Ronald Fox violated the Clark County Courts Marshals Division Policy and Procedures Manual (Addendum No. 1) the Model Code of Conduct for Judicial Employees in the State of Nevada handbook (Addendum No. 2).

**Clark County Courts Marshal's Division, Policy and Procedures Manual**
**1.02.00 Law enforcement Code of Ethics**
**1.03.00 Division Values**
**12.00.00 Code of Conduct**
**12.01.00 Standards of Conduct**

**Model Code of Conduct for Judicial Employees in the State of Nevada**
**Canon Two**
**Canon Three-Section (B), (C) and (F)**

N.R.S 197.200 (1) (2) & N.R.S 200.460 (1) (Addendum No. 33).

## ALLEGATION No. 1

Marshal Ronald Fox violated the Clark County Courts Marshal's Division Policy and Procedure Manual and the Model Code of Conduct for Judicial Employees in the State of Nevada Canon Two and Canon Three, sections B, C and F, in that there was no probable cause for Marshal Fox to search Monica Contreras in the anteroom.

## ALLEGATION No. 2

Marshal Fox violated the Clark County Courts Marshal's Division Policy and Procedures Manual and Model Code of Conduct for Judicial Employees in the State of Nevada Canon Two and Canon Three, sections B, C and F, in that Marshal Fox improperly searched Monica Contreras in the anteroom.

## ALLEGATION No. 3

Marshal Fox violated the Clark County Courts Marshal's Division Policy and Procedure Manual and Model Code of Conduct for Judicial Employees in the State of Nevada Canon Two and Canon Three, sections B, C and F, by attempting to improperly search Monica Contreras a second time in the anteroom.

## ALLEGATION No. 4

Marshal Fox violated the Clark County Courts Marshal's Division Policy and Procedure Manual and Model Code of Conduct for Judicial Employees in the State of Nevada Canon Two and Canon Three, sections B, C and F, in that Marshal Fox used coercive methods to improperly influence Monica Contreras into providing false testimony.

## ALLEGATION No. 5

Marshal Fox violated the Clark County Courts Marshal's Division Policy and Procedure Manual and Model Code of Conduct for Judicial Employees in the State of Nevada Canon Two and Canon Three, sections B, C and F, in that he improperly issued a citation to Monica Contreras.

## ALLEGATION No. 6

Marshal Fox violated the Clark County Courts Marshal's Division Policy and Procedure Manual, Model Code of Conduct for Judicial Employees in the State of Nevada Canon Two and Canon Three, sections B, C, F and Nevada Revised Statues 197.200 (1) (2) and 200.460 (1), in that Marshal Fox falsely arrested Monica Contreras.

Complaint Investigation
IA#045-2011
Page 54 of 71

## ADJUDICATION

In determining the adjudication of each specific allegation, credibility has to be weighed by the amount of the evidence. Based on the investigation and the statements provided by the Complainant Monica Contreras and interviews with multiple witnesses and Deputy Marshal Ronald Fox's own statements in response to questioning; it is the opinion of this CCCMD investigators that Deputy Marshal Ronald Fox did violate the Clark County Courts Marshals Division Policy and Procedure Manual and the Model Code of Conduct for Judicial Employees in the State of Nevada handbook (Addendums 1 & 2).

**Clark County Courts Marshal's Division, Policy and Procedure Manual**
**1.02.00 Law enforcement Code of Ethics**
**1.03.00 Division Values**
**12.00.00 Code of Conduct**
**12.01.00 Standards of Conduct**

Model Code of Conduct for Judicial Employees in the State of Nevada
Canon Two
Canon Three-Section (B), (C) and (F)

R.S 197.200 (1) (2) & N.R.S 200.460 (1) (Addendum No. 33).

## CLASSIFICATION

It is recommended that allegations 1, 2, 3, 4, 5 & 6 all be classified as <u>SUSTAINED</u>

## INVESTIGATOR'S RATIONAL FOR CLASSIFICATIONS

Investigators identified several justifiable reasons and/or facts for their classifications:

## ALLEGATION No. 1

Deputy Marshal Ronald Fox violated the Clark County Courts Policy and Procedures Manual and the Model Code of Conduct for Judicial Employees in the State of Nevada Canon Two and Canon Three-Section B, C and F, in that there was no probable cause for Marshal Fox to search Monica Contreras in the anteroom.

The allegation was sustained based on the following facts:

**Balisa Johnson Senior Child Protective Services Specialist verbally confirmed to investigators that Marshal Fox admitted that he did in fact search Monica Contreras. Johnson documented this information in her report.**

Fox stated to Johnson he directed Monica Contreras inside the anteroom because Hearing Master Doninger suspected she was under the influence of narcotics. Fox inquired if Contreras had any drugs on her and she responded no. Fox asked if she had any drugs in her purse and Contreras again stated no unless somebody else had put them in there.

Complaint Investigation
IA#045-2011
Page 55 of 71

At which time Fox conducted a physical (pat down) search of Contreras's body and her purse for drugs. No drugs were found. Fox told Contreras she could leave. At which time Contreras began acting erratically ranting and raving and accusing Fox of touching her inappropriately. Contreras told Fox that she wanted to speak to the judge and make sure that she could leave because she didn't trust anyone in the court. **Leonard Cash Family Court Administrator statements confirm Fox did in fact search Monica Contreras in the anteroom.**

Cash stated he remember sometime in early November 2011, subsequent to Fox being relieved of duty because of the allegations made by Monica Contreras that Lieutenant Steve Rushfield mentioned he had contact with Fox who admitted that he had physically searched "patted" the person of Contreras subsequent to her arrest in courtroom No.19. Lieutenant Rushfield inquired if Fox had used proper procedure and Fox replied "yes" to following procedure but "no" to having a female or another witness present for the search. **The investigation proved the only place where a pat down search of Monica Contreras could have taken place without a witness present, was when Monica Contreras and her small daughter were inside the anteroom with Fox.**

Cash in a second interview recalled Lieutenant Rushfield stating something like or words ꞁ the effect of, Fox stated he did ask Monica Contreras **"to lift her blouse out to see if there was any drug paraphernalia in her shirt."** That statement is consistent with what Monica Contreras had told CCCMD investigator Sergeant Dana Saunders. **The investigation proved that Fox provided false and/or misleading statements to CCCMD investigators when he denied inappropriately touching Monica Contreras in the anteroom.**

Deputy Marshal Lieutenant Steve Rushfield P#119 was interviewed a third time on April 10, 2012, at 1620 hours, via the telephone. Lieutenant Rushfield was asked if he recalled having a conversation sometime in early November 2011, with Leonard Cash where he (Rushfield) mentioned that Fox stated to him (Rushfield) that Fox had searched (patted down) Monica Contreras without a witness being present. **Rushfield stated he couldn't remember the specifics of the conversation with Cash but stated "it's possible" and/or "that's possible" the conversation with Cash did take place.**

Upon the investigators review of the surveillance footage; Monica Contreras and her child waited outside courtroom No.19 (lobby area) for approximately 1 hour before being called into the courtroom for the TPO hearing by Fox. Contreras was before Hearing Master Doninger for less than 1 minute, the case was dissolved and Contreras was dismissed. It is unreasonable for a reasonable person to believe that Monica Contreras ꞁ uld tell Fox she wanted to be in a safe place to give her baby some juice after waiting ꞁ ne lobby for an hour, going before Hearing Master Doninger for less than 1 minute ꞁen being told she could leave the courthouse.

Complaint Investigation
IA#045-2011
Page 56 of 71

# NOTE FOX'S OWN STATEMENTS

"If you have to pat down a female, you pat down a female". If there's a female officer you can call and then we do. If the circumstances call for a search of a female they just do it at the Family Court.

## AND

Fox admitted during his interview with investigators that he had previously been accused of inappropriately touching another female at the Family Court approximately 1 year ago. **Fox also stated to investigators that he had patted down and searched at least 3 other females but he couldn't remember the exact number.**

When Fox was interviewed by LVMPD Detective Demas, Fox stated that he proceeded to the anteroom and discovered Monica Contreras and her child inside. At which time Fox instructed Contreras to be quiet and to keep her child quiet as well. Fox wondered as to why Contreras and her child were still at the courthouse since her case had been dissolved earlier by Hearing Master Doninger. **Fox told LVMPD Detective Demas he was surprised to see Contreras in the anteroom. Fox's incident report states,** Contreras went into the anteroom to give her baby some juice. The investigation ·oved that Fox provided false and/or misleading statements to LVMPD Detective Demas when he stated he was surprised to see Monica Contreras in the anteroom.

Fox stated in his report that Monica Contreras and the baby were causing a disturbance in the anteroom that could be heard inside of the courtroom. When investigators interviewed Hearing Master Patricia Doninger and Court Clerk Melissa Goldstein neither one recalled hearing noises or any type of disturbance in the courtroom at all. **The investigation proved that Fox provided false and/or misleading statements to CCCMD investigators when he stated Monica Contreras and her baby were causing a disturbance. Neither Hearing Master Patricia Doninger nor Clerk Melisa Goldstein heard any disturbance.**

Fox stated in his report that Monica Contreras stated that she did not want to leave and/or get into trouble like she did in Henderson where she was arrested for drug paraphernalia. CCCMD Investigators review of Monica Contreras' criminal history confirmed **Monica Contreras had not been arrested for narcotics or drug paraphernalia anywhere** (Addendum No. 32). It is unreasonable for a reasonable person to believe that Monica Contreras would tell a police officer or deputy marshal in a court setting that they have ɔeen arrested for drug paraphernalia and they have not.

The second time Fox entered the anteroom with Monica Contreras he closed the door and emained inside with the door closed for **approximately 3 minutes.** Fox asserted in his ·view with CCCMD investigators he was telling Contreras to keep the noise down. ʒontreras kept him there when she began to question him regarding court matters.

Complaint Investigation
IA#045-2011
Page 57 of 71

It is unreasonable for a reasonable person to believe that Fox had to close the door
to tell Monica Contreras to keep the noise down; further unreasonable to believe
Contreras would have questions for Fox after she was just before the court and told
she was done and could leave.

## ALLEGATION No. 2

Deputy Marshal Ronald Fox violated the Clark County Courts Marshal's Division Policy
and Procedure Manual and Model Code of Conduct for Judicial Employees in the State of
Nevada Canon Two and Canon Three-Section B, C and F, in that Marshal Fox
improperly searched Monica Contreras in the anteroom.

The allegation was sustained based on the following facts:

**Balisa Johnson Senior Child Protective Services Specialist verbally confirmed to
investigators that Marshal Fox admitted that he did in fact search Monica
Contreras. Johnson documented this information in her report.**

Fox stated to Johnson he directed Monica Contreras inside the anteroom because Hearing
Master Doninger suspected she was under the influence of narcotics. Fox inquired if
Contreras had any drugs on her and she responded no. Fox asked if she had any drugs in
er purse and Contreras again stated no unless somebody else had put them in there. At
which time Fox conducted a physical (pat down) search Contreras's body and her purse
for drugs. No drugs were found. Fox told Contreras she could leave. At which time
Contreras began acting erratically ranting and raving and accusing Fox of touching her
inappropriately. Contreras told Fox that she wanted to speak to the judge and make sure
that she could leave because she didn't trust anyone in the court.

**Leonard Cash Family Court Administrator statements confirms Fox did in fact
search Monica Contreras in the anteroom.**

Cash stated he remembers sometime in early November 2011, subsequent to Fox being
relieved of duty because of the allegations made by Monica Contreras that Lieutenant
Rushfield mentioned he had contact with Fox who admitted he had physically searched
"patted" the person of Contreras subsequent to her arrest in courtroom No.19. Lieutenant
Rushfield inquired if Fox had used proper procedure and Fox replied "yes" to following
procedure[58] but "no" to having a female or another witness present for the search. The
investigation proved the only place where a pat down search of Monica Contreras
could have taken place without a witness present was when Monica Contreras was
with her small daughter inside the anteroom with Fox.

Complaint Investigation
IA#045-2011
Page 58 of 71

Cash in a second interview stated he recalled Lieutenant Rushfield stating something like or words to the effect of, Fox stated he did ask Monica Contreras **"to lift her blouse out to see if there was any drug paraphernalia in her shirt."** That statement is consistent with what Monica Contreras had told CCCMD investigator Sergeant Dana Saunders, is what Fox said to her when she was with him inside of the anteroom. **The investigation proved that Fox provided false and/or misleading statements to CCCMD investigators when he denied attempting a second inappropriate search of Monica Contreras in the anteroom.**

Deputy Marshal Lieutenant Steve Rushfield P#119 was interviewed a third time on April 10, 2012, at 1620 hours, via the telephone. Lieutenant Rushfield was asked if he recalled having a conversation sometime in early November 2011, with Leonard Cash where he (Rushfield) mentioned that Fox stated to him (Rushfield) that Fox had searched (patted down) Monica Contreras without a witness being present. **Rushfield stated he couldn't remember the specifics of the conversation with Cash but stated "it's possible" and/or "that's possible" the conversation with Cash did take place.**

Upon the investigators review of the surveillance footage; Monica Contreras and her child waited outside courtroom No.19 (lobby area) for approximately 1 hour before being lled into the courtroom for the TPO hearing by Fox. Contreras was before Hearing Master Doninger for less than 1 minute, the case was dissolved and Contreras was dismissed. It is unreasonable for a reasonable person to believe that Monica Contreras would tell Fox she wanted to be in a safe place to give her baby some juice after waiting in the lobby for an hour, going before Hearing Master Doninger for less than 1 minute then being told she could leave the courthouse.

## NOTE FOX'S OWN STATEMENTS

"If you have to pat down a female, you pat down a female". If there's a female officer you can call and then we do. If the circumstances call for a search of a female they just do it at the Family Court.

### AND

Fox admitted during his interview with investigators that he had previously been accused of inappropriately touching another female at the Family Court approximately 1 year ago. Fox also stated to investigators that he had patted down and searched at least 3 other females but he couldn't remember the exact number.

When Fox was interviewed by LVMPD Detective Demas, Fox stated that he proceeded e anteroom and discovered Monica Contreras and her child inside. At which time ox instructed Contreras to be quiet and to keep her child quiet as well.

Fox wondered as to why Contreras and her child were still at the courthouse since her case had been dissolved earlier by Hearing Master Doninger. Fox told LVMPD Detective Demas he was surprised to see Contreras in the anteroom. Fox's incident report states, Contreras went into the anteroom to give her baby some juice. The investigation proved that Fox provided false and/or misleading statements to LVMPD Detective Demas when he stated he was surprised to see Monica Contreras in the anteroom.

Fox stated in his report that Monica Contreras and the baby were causing a disturbance in the anteroom that could be heard inside of the courtroom. When investigators interviewed Hearing Master Patricia Doninger and Court Clerk Melissa Goldstein neither one recalled hearing noises or any type of disturbance in the courtroom at all. The investigation proved that Fox provided false and/or misleading statements to CCCMD investigators when he stated Monica Contreras and her baby were causing a disturbance. Neither Hearing Master Patricia Doninger nor Clerk Melisa Goldstein heard any disturbance.

Fox stated in his report that Monica Contreras stated that she did not want to leave and/or get into trouble like she did in Henderson where she was arrested for drug paraphernalia. CCCMD Investigators review of Monica Contreras' criminal history confirmed Monica Contreras was never arrested for narcotics or drug paraphernalia anywhere (Addendum No. 32). It is unreasonable for a reasonable person to believe that Monica Contreras would tell a police officer or deputy marshal in a court setting that they have been arrested for drug paraphernalia and they have not.

The second time Fox entered the anteroom with Monica Contreras he closed the door and remained inside with the door closed for approximately 3 minutes. Fox asserted in his interview with CCCMD investigators he was telling Contreras to keep the noise down. Contreras kept him there when she began to question him regarding court matters. It is unreasonable for a reasonable person to believe that Fox had to close the door to tell Monica Contreras to keep the noise down; further unreasonable to believe Contreras would have questions for Fox after she was just before the court and told she was done and could leave.

ALLEGATION No. 3
Deputy Marshal Ronald Fox violated the Clark County Courts Marshal's Division Policy and Procedure Manual and the Model Code of Conduct for Judicial Employees in the State of Nevada Canon Two and Canon Three-Section B, C and F, by attempting to improperly search Contreras for a second time in the anteroom.

The allegation was sustained based on the following facts:

Complaint Investigation
IA#045-2011
Page 60 of 71

Balisa Johnson Senior Child Protective Services Specialist verbally confirmed to investigators that Marshal Fox admitted that he did in fact search Monica Contreras. Johnson documented this information in her report.

Fox stated to Johnson he directed Monica Contreras inside the anteroom because Hearing Master Doninger suspected she was under the influence of narcotics. Fox inquired if Contreras had any drugs on her and she responded no. Fox asked if she had any drugs in her purse and Contreras again stated no unless somebody else had put them in there. At which time Fox conducted a physical (pat down) search Contreras's body and her purse for drugs. No drugs were found. Fox told Contreras she could leave. At which time Contreras began acting erratically ranting and raving and accusing Fox of touching her inappropriately. Contreras told Fox that she wanted to speak to the judge and make sure that she could leave because she didn't trust anyone in the court.

Leonard Cash Family Court Administrator statements confirms Fox did in fact search Monica Contreras in the anteroom.

Cash stated he remembers sometime in early November 2011, subsequent to Fox being relieved of duty because of the allegations made by Monica Contreras that Lieutenant ⌐ ˑshfield mentioned he had contact with Fox who admitted he had physically searched ⌐atted" the person of Contreras subsequent to her arrest in courtroom No.19. Lieutenant Rushfield inquired if Fox had used proper procedure and Fox replied "yes" to following procedure[59] but "no" to having a female or another witness present for the search. The investigation proved the only place where a pat down search of Monica Contreras could have taken place without a witness was when Monica Contreras was alone with her infant daughter inside the anteroom and Fox.

Cash in a second interview stated he recalled Lieutenant Rushfield stating something like or words to the effect of, Fox stated he did ask Monica Contreras "to lift her blouse out to see if there was any drug paraphernalia in her shirt." That statement is consistent with what Monica Contreras had told CCCMD investigator Sergeant Dana Saunders, is what Fox said to her when she was with him inside of the anteroom.

The investigation proved that Fox provided false and/or misleading statements to CCCMD investigators when he denied inappropriately touching Monica Contreras in the anteroom.

Complaint Investigation
IA#045-2011
Page 61 of 71

Deputy Marshal Lieutenant Steve Rushfield P#119 was interviewed a third time on April 10, 2012, at 1620 hours, via the telephone. Lieutenant Rushfield was asked if he recalled having a conversation sometime in early November 2011, with Leonard Cash where he (Rushfield) mentioned that Fox stated to him (Rushfield) that Fox had searched (patted down) Monica Contreras without a witness being present. **Rushfield stated he couldn't remember the specifics of the conversation with Cash but stated "it's possible" and/or "that's possible" the conversation with Cash did take place.**

Upon the investigators review of the surveillance footage, Monica Contreras and her child waited outside courtroom No.19 (lobby area) for approximately 1 hour before being called into the courtroom for the TPO hearing by Fox. Contreras was before Hearing Master Doninger for less than 1 minute, the case was dissolved and Contreras was dismissed. It is unreasonable for a reasonable person to believe that Monica Contreras would tell Fox she wanted to be in a safe place to give her baby some juice after waiting in the lobby for an hour, going before Hearing Master Doninger for less than 1 minute then being told she could leave the courthouse.

## NOTE FOX'S OWN STATEMENTS

"you have to pat down a female, you pat down a female". If there's a female officer you can call and then we do. If the circumstances call for a search of a female they just do it at the Family Court.

### AND

Fox admitted during his interview with investigators that he had previously been accused of inappropriately touching another female at the Family Court approximately 1 year ago. **Fox also stated to investigators that he had patted down and searched at least 3 other females but he couldn't remember the exact number.**

When Fox was interviewed by LVMPD Detective Demas, Fox stated that he proceeded to the anteroom and discovered Monica Contreras and her child inside. At which time Fox instructed Contreras to be quiet and to keep her child quiet as well. Fox wondered as to why Contreras and her child were still at the courthouse since her case had been dissolved earlier by Hearing Master Doninger. **Fox told LVMPD Detective Demas he was surprised to see Contreras in the anteroom. Fox's incident report states, Contreras went into the anteroom to give her baby some juice. The investigation proved that Fox provided false and/or misleading statements to LVMPD Detective Demas when he stated he was surprised to see Monica Contreras in the anteroom.**

Fox stated in his report that Monica Contreras and the baby were causing a disturbance in anteroom that could be heard inside of the courtroom. When investigators interviewed Hearing Master Patricia Doninger and Court Clerk Melissa Goldstein neither one recalled hearing noises or any type of disturbance in the courtroom at all.

Complaint Investigation
IA#045-2011
Page 62 of 71

**The investigation proved that Fox provided false and/or misleading statements to CCCMD investigators when he stated Monica Contreras and her baby were causing a disturbance. Neither Hearing Master Patricia Doninger nor Clerk Melisa Goldstein heard any disturbance.**

Fox stated in his report that Monica Contreras stated that she did not want to leave and/or get into trouble like she did in Henderson where she was arrested for drug paraphernalia. CCCMD Investigators review of Monica Contreras' criminal history confirmed **Monica Contreras had not been arrested for narcotics or drug paraphernalia anywhere** (Addendum No. 32). It is unreasonable for a reasonable person to believe that Monica Contreras would tell a police officer or deputy marshal in a court setting that they have been arrested for drug paraphernalia and they have not.

The second time Fox entered the anteroom with Monica Contreras he closed the door and remained inside with the door closed for **approximately 3 minutes.** Fox asserted in his interview with CCCMD investigators he was telling Contreras to keep the noise down. Contreras kept him there when she began to question him regarding court matters. **It is unreasonable for a reasonable person to believe that Fox had to close the door to tell Monica Contreras to keep the noise down; further unreasonable to believe Contreras would have questions for Fox after she was just before the court and told she was done and could leave.**

**The investigation proved that Fox provided false and/or misleading statements to CCCMD investigators when he denied attempting to conduct a second search of Monica Contreras while inside of the anteroom.**

### ALLEGATION No. 4
Deputy Marshal Ronald Fox violated the Clark County Courts Marshal's Division Policy and Procedure Manual and the Model Code of Conduct for Judicial Employees in the State of Nevada Canon Two and Canon Three-Section B, C and F, in that Marshal Fox used coercive methods to improperly influence Monica Contreras into providing false testimony.

The allegation was sustained based on the following facts:

Upon investigators reviewing the DVD of the Paterna hearing bearing file number T134949 on August 8, 2011, TPO court proceeding, Fox's coercive conduct is evident. Fox is observed in the courtroom (No.19) threatening to arrest Monica Contreras after she informed Hearing Master Doninger that Fox had told Contreras to lift up her shirt. Fox refuted the claims and stated "so the story stands".

Contreras is shown pleading with Kenyon and Fox that she was a good person and that she was telling the truth. Fox stated he was going to pursue charges against Contreras.

Complaint Investigation
IA#045-2011
Page 63 of 71

Fox then announced the following "I'm going to arrest you for falsely accusing a police officer, but if you say right now that all that is untrue, then you can leave and I will not arrest you". Fox then directed Contreras towards the courtroom microphone where Contreras stated to Hearing Master Doninger "He (Fox) put me in a room and asked me to lift up my shirt without a witness".

The investigation proved that Fox used coercive methods to improperly influence Monica Contreras into providing false testimony.

ALLEGATION No. 5
Deputy Ronald Marshal Fox violated the Clark County Courts Marshal's Division Policy and Procedure Manual and the Model Code of Conduct for Judicial Employees in the State of Nevada Canon Two and Canon Three-Section B, C and F, in that he improperly issued a false citation to Monica Contreras.

The allegation was sustained based on the following facts:

Fox affirms in his written report per event number 110808-042, title "Disturbance", that he cited and released Contreras per citation number (1-04544686) "Furnishing False Information to a Police Officer".

Fox affirms in an interview conducted on March 21, 2012, that he prepared citation number (1-04544686) "Furnishing False Information to a Police Officer". Further Fox admits he was not aware the charge is erroneous therefore, not supported by an arrest.

The investigation proved via non-disputed courtroom surveillance footage Fox in fact did commit this allegation.

ALLEGATION No. 6
Deputy Marshal Ronald Fox violated the Clark County Marshal's Division Policy and Procedure Manual, Model Code of Conduct for Judicial Employees in the State of Nevada Canon Two and Canon Three-Section B, C, F and Nevada Revised Statues 197.200 (1) (2) and 200.460 (1), in that Marshal Fox falsely arrested Monica Contreras.

The allegation was sustained based on the following facts:

When Monica Contreras refused to be coerced, Fox directed Deputy Marshal James Kenyon to arrest Contreras. Fox called the control room and requested someone call CPS to take custody of Contreras's minor child. This fact was recorded via courtroom surveillance coverage, witnessed by Hearing Master Patricia Doninger and Courtroom Clerk Melissa Goldstein.

en Contreras refused to acquiesce and recant her allegations, Fox did arrest ontreras and prepared citation number (1-04544686) "Furnishing False lformation to a Police Officer".

Complaint Investigation
IA#045-2011
Page 64 of 71

Be further apprised the mere making of an allegation of misconduct against a peace officer is not an offense that a person can be arrested upon.

Contreras was also cited for resisting arrest. The DVD of the Paterna hearing bearing file number T134949 on August 8, 2011, TPO court proceeding, clearly depicts Contreras was not resisting arrest. She appeared confused, in shock and couldn't understand why she was being arrested when she thought she was inappropriately searched by Fox.

Contreras was escorted to a holding cell, lost primary custody of her minor child and was cited.

The investigation proved that Monica Contreras was in fact cited via the citation(s) written by both Fox and Kenyon presented as evidence.

NOTE;
In addition to the above six sustained allegations, Fox demonstrated a lack of candor and truthfulness throughout this investigation. This is based on the ıllowing facts:

* On August 8, 2011, Marshal Fox memorialized the following statement in his Marshal Report: After court was completed for Monica Contreras, Monica told me she was going to a safe place to sit and give her daughter a juice box.

On or about August 8, 2011, LVMPD Sexual Assault Detective Demas interviewed Marshal Fox. Detective Demas asked Fox to tell him about the afternoon regarding Monica Contreras? Fox stated, "Monica's case was dissolved. Monica immediately went into the anteroom. I proceeded to call me cases. I don't know why she went in there, her court was completed, she could of left or words to that effect.

On March 21, 2011, Lieutenant Moody and Sergeant Saunders interviewed Marshal Fox. Marshal Fox stated almost verbatim what he memorialized on his report noted above.

Marshal Fox clearly articulated conflicting statements that are critical to his credibility as to why Monica Contreras went into the anteroom. 

* On March 21, 2011, Lieutenant Moody and Sergeant Saunders interviewed Marshal Fox. Marshal Fox was asked the following questions:

˙as it your decision to take the child?  Marshal Fox stated, "No it was not."

Did you have any input whether the child was going to be taken by CPS?  Marshal Fox stated, "No I did not."

Complaint Investigation
IA#045-2011
Page 65 of 71

Why did you arrest Ms. Contreras? Marshal Fox stated, "I did not arrest Ms. Contreras."

Why did you detain Ms. Contreras? Marshal Fox stated, "I did not detain Ms. Contreras."

**Marshal Fox was untruthful in answering the above four questions.** Marshal Fox's untruthfulness and lack of candor is substantiated by the courtroom surveillance recording. **Marshal Fox clearly stated he was arresting Ms. Contreras for making false allegations against a Police Officer** (he is a Peace Officer). **Marshal Fox stated** to Marshal Kenyon, **"Hand cuff her and bring her in, story stands,"** or words to that effect. **Marshal Fox stated to an unknown person, "If you could call Child Haven for,"** and searches Ms. Contreras's purse. Ms. Contreras continues to explain her situation to Marshal Kenyon and **Marshal Fox stated, "Jimmy I got to go to court, don't have time to do this, arrest her and I take the kid, we are done,"** or words to that effect. Marshal Fox requests Ms. Contreras to tell the truth and directs her to the microphone. Ms. Contreras doesn't recant her statements against Marshal Fox, and Marshal Fox stated, **"Okay take her to jail." Marshal Fox is observed on the telephone in the courtroom and stated to an unknown person on the telephone, "I'm** ~ing to have to take one child to Child Haven and book into custody," or words to that effect.

* Cash stated he remembers sometime in early November 2011, subsequent to Fox being relieved of duty because of the allegations made by Monica Contreras that Lieutenant Rushfield mentioned he had contact with Fox who admitted he had physically searched "patted" the person of Contreras subsequent to her arrest in courtroom No.19. Lieutenant Rushfield inquired if Fox had used proper procedure and Fox replied "yes" to following procedure[60] but "no" to having a female or another witness present for the search. **The investigation proved the only place where a pat down search of Monica Contreras could have taken place without a witness present was when Monica Contreras and her small daughter were inside the anteroom with Fox. The courtroom video surveillance does not depict Marshal Fox conducting a search incident to the arrest of Contreras.**

* Cash in a second interview stated he recalled Lieutenant Rushfield stating something like or words to the effect of, Fox stated he did ask Monica Contreras **"to lift her blouse out to see if there was any drug paraphernalia in her shirt."** That statement is consistent with what Monica Contreras had told CCCMD investigator Sergeant Dana Saunders, is what Fox said to her when she was with him inside of the anteroom.

Complaint Investigation
IA#045-2011
Page 66 of 71

\* In the incident report prepared by Fox memorialized per event number 110808-042,
titled "Disturbance" Fox states, Contreras told him (Fox) that "she was going to a safe
place to sit and give her daughter a juice box" later identified as the anteroom proximate
to courtroom nineteen. Fox's incident report is inconsistent with the statement he offered
to Las Vegas Metropolitan Police Department sexual assault detectives Matthew Demas
and Todd Katowich.

\* In the statement memorialized per LVMPD detectives report/event number
110808004134, Fox fails to exercise candor by advising the detectives that he was aware
Contreras was in the anteroom or the circumstances that brought Contreras to the
anteroom. In fact Fox expressed wonderment as to why Contreras was still on property as
her case had been dissolved forty five minutes earlier. Fox denied searching Contreras in
the anteroom.

\* In an interview conducted on March 21, 2012, Deputy Marshal Ronald Fox
P#241denied making the decision to arrest Contreras. According to Fox, Deputy Marshal
James Kenyon was the acting supervisor on duty and it was Kenyon's decision to affect
the arrest. This denial is inconsistent with the incident report prepared by Fox
memorialized per event number 10808-042, titled "Disturbance". Fox states, he (Fox)
ld Deputy Marshal James Kenyon P#123 to bring Contreras to the Family Court
vision's holding cells and detain Contreras.

Deputy Marshal James Kenyon P#123 also prepared an incident report, memorialized per
event number 110808-042, titled "Disturbance" Kenyon confirms he (Kenyon)
authorized and agreed with Fox's arrest of Contreras. In an interview conducted on
February 22, 2012, **Kenyon stated it was Fox's decision to arrest Contreras and he
assisted Fox with taking Contreras into custody.**

\* Deputy Marshal Sandra Muldrow P#239, prepared an incident report memorialized per
event number 110808-042, titled "Disturbance". **Muldrow confirms that Fox asked her
to witness him giving Contreras a field sobriety test.** Further, Fox asked Muldrow to
administer a urinalysis test to Contreras. In an interview conducted on November 15,
2011, Muldrow could not recall who requested Contreras submit to a urinalysis. The test
results were negative.

\* Deputy Marshal Gregory Bryant P#122, prepared a voluntary statement memorialized
per event number 110808-3368, which affirms Fox as the arresting deputy marshal and
the deputy marshal issuing citations to Contreras. **In an interview conducted on
February 24, 2012, Bryant advised Contreras was taken into custody and detained
by Fox.**

 ¯he investigation proved that Fox demonstrated a lack of candor when he
 ..ovided proven false and misleading statements to CCCMD IA investigators
regarding this investigation and falsified his Marshal Report of this incident.

Complaint Investigation
IA#045-2011
Page 67 of 71

\* The investigation proved that Fox provided false and/or misleading statements to CCCMD investigators when he denied inappropriately touching Monica Contreras in the anteroom.

\* Fox told LVMPD Detective Demas he was surprised to see Contreras in the anteroom. Fox's incident report states, Contreras went into the anteroom to give her baby some juice. The investigation proved that Fox provided false and/or misleading statements to LVMPD Detective Demas when he stated he was surprised to see Monica Contreras in the anteroom.

\* The investigation proved that Fox provided false and/or misleading statements to CCCMD investigators when he stated Monica Contreras and her baby were causing a disturbance. Neither Hearing Master Patricia Doninger nor Clerk Melisa Goldstein heard any disturbance.

⊚ The investigation proved that Fox provided false and/or misleading statements to CCCMD investigators when he denied attempting a second inappropriately search of Monica Contreras in the anteroom.

## Nevada Revised Statute (N.R.S.) violations

The investigation revealed Deputy Marshal Ronald Fox violated N.R.S chapter sections:

## FALSE IMPRISONMENT

N.R.S. 200.460 (1) False imprisonment is an unlawful violation of the personal liberty of another, and consists in confinement or detention without sufficient legal authority. (Addendum No. 33)

## OPPRESSION UNDER COLOR OF OFFICE

N.R.S 197.200 (1) (A) An officer, or a person pretending to be an officer, who unlawfully and maliciously, under pretense or color of official authority (a) Arrest or detains a person against the person's will. (Addendum No. 33)

Complaint Investigation
IA#045-2011
Page 68 of 71

## CCCMD SUPERVISORY OPINION OF THE INVESTIGATION

Clark County Courts Deputy Marshals are expected to be mindful of their special identification by the public as an upholder of the law. Laxity of conduct or manner in both their professional and private lives cannot but reflect upon all Peace Officers and the Courts. The community these officers provide service to require that them to lead the life of a decent and honorable person. Following the career of a Peace Officer gives no person special prerequisites. It does give the satisfaction and pride of following and furthering an unbroken tradition of safeguarding the American Republic. The officer who reflects upon this tradition should not degrade it. Rather, he/she will so conduct his/her professional and private life in a manner that the public will regard him/her as an example of stability, fidelity and morality.

Fox denied all the allegations but does admit to having been accused of the same type of behavior on prior occasion(s). That in itself leaves a reasonable person to wonder why in the world Fox would place himself in a position where he could again be accused of inappropriately touching another female. Fox's own statements lead any reasonable person to believe that he (Fox) has routinely conducted pat down searches of other females and in doing so; Fox believes his actions are entirely permissible at the ¬amily Court.

What was also learned in this investigation is after Monica Contreras verbally informed an acting marshal supervisor (Deputy Marshal James Kenyon) that Fox had ordered her to lift up her shirt (in the anteroom), Kenyon failed to take any type of supervisory action on that allegation(s) formally or otherwise. Kenyon failed to notify Lieutenant Steve Rushfield of the allegations when he (Rushfield) returned to the Family Court. Kenyon is shown on the DVD acquiescing to Fox's threatening of Contreras in the courtroom. Kenyon assisted in arresting Contreras for making the allegation(s) that Fox had conducted himself inappropriately and Kenyon cited Contreras for Resisting Arrest (Cite # 1-04544687). Anybody viewing the courtroom surveillance DVD could clearly observe that the junior officer (Fox) with approximately 3 years court experience was giving direction to Kenyon the senior courtroom officer with approximately 22 years on what to do.

Neither Kenyon nor the other "admitted acting supervisor" (Deputy Marshal Gregory Bryant) took the time to escort Monica Contreras away from Fox and interview her regarding the allegation(s) or at least conduct a preliminary complaint investigation. Neither "acting supervisor" took the time to review Fox's marshal report or the citation to verify its accuracy.

Note that the mere making of an allegation of misconduct against a peace officer is ⁺ an offense that a person can be arrested upon, Kenyon and Bryant should both ...ow this.

Complaint Investigation
IA#045-2011
Page 69 of 71

Marshals James Kenyon and Gregory Bryant both showed a lack of leadership, lack of basic police knowledge, lack of good judgment and lack of common sense.

During the course of this investigation, CCCMD investigators obtained more information regarding the allegation(s) against Fox from the LVMPD detectives and the preliminary investigating LVMPD police officers than personnel assigned to the Family Court. Family Court personnel failed to apprise the investigators of the existence of the surveillance footage of the lobby outside the anteroom and the fact that they had provided that same evidence to LVMPD investigators. There was clear lack of reporting details on marshals/incidents reports and "no chain of custody" record regarding the evidence.

**Fox had previously been accused of the same type of behavior approximately 1 year ago. Family Court personnel were unable to produce any report of that incident for CCCMD investigators which is concerning.**

None of the marshals that administered the drug test to Monica Contreras was currently certified (according to training records) to give such a test. That becomes legally problematic with their court testimony.

Lastly when Family Court marshals were interviewed most of their memories appeared to ave failed for various reasons.

## EMPLOYEE'S COMPLAINT HISTORY
Deputy Marshal Ronald Fox has no sustained complaints in his personnel file

## ACTION TAKEN
Report submitted to Clark County Human Resources Edward May & Melody Long.

## PENALTY
Disciplinary action is recommended.