1  WALTER R. CANNON, ESQ.
   Nevada Bar No. 001505
2  OLSON, CANNON, GORMLEY
   ANGULO & STOBERSKI
3  9950 W. Cheyenne Avenue
   Las Vegas, Nevada 89129
4  (702) 384-4012 - Telephone
   (702) 383-0701 - Fax
5  wcannon@ocgas.com
   Attorneys for Patricia Doninger
6

7                    UNITED STATES DISTRICT COURT

8                          DISTRICT OF NEVADA

9

10  MONICA CONTRERAS, individually,        )
    and in her capacity as natural mother and )
11  guardian of, and on behalf of, ANDREA   )
    PATERNA, a minor,                       )
12                                          )
              Plaintiffs,                   )
13                                          )   CASE NO. 2:13-cv-00591-JCM-PAL
    vs.                                     )
14                                          )
    RONALD D. FOX; JAMES KENYON;            )
15  GREGORY BRYANT; PATRICIA                )
    DONINGER; CLARK COUNTY,                 )
16  NEVADA; DOES 1-10; and ROE              )
    ENTITIES 11-20, inclusive,              )
17                                          )
              Defendants.                   )
18  _____)

19        **DEFENDANT PATRICIA DONINGER'S MOTION TO DISMISS**

20        COMES NOW Defendant, Patricia Doninger, by and through her undersigned counsel,

21  OLSON, CANNON, GORMLEY, ANGULO & STOBERSKI, and hereby respectfully submits

22  this Motion to Dismiss the claims against her in the First Amended Complaint pursuant to

23  Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be

24  granted.

25  . . .

26  . . .

27  . . .

28  . . .

1  This Motion is made and based upon all the pleadings and papers on file herein, the

2  attached Memorandum of Points and Authorities, in conjunction with such evidence and further

3  authorities as the Court may require at the time this matter is considered.

4      Dated this 17th day of January 2014.

5

6                           OLSON, CANNON, GORMLEY
                         ANGULO & STOBERSKI

7

8

9                By:   /s/  Walter R. Cannon
                      WALTER R. CANNON

10                        Nevada Bar No.  001505
                      9950 W. Cheyenne Avenue

11                        Las Vegas, Nevada 89129
                      Attorneys for Defendant

12                        PATRICIA DONINGER

13              **MEMORANDUM OF POINTS AND AUTHORITIES**

14                             I.

15                     **INTRODUCTION**

16      Plaintiffs filed their First Amended Complaint on December 24, 2013 and asserted claims

17  having federal jurisdiction pursuant to 28 U.S.C. §1331 and §1334 and 42 U.S.C. § 1983 (with

18  supplemental jurisdiction with respect to the state law claims pursuant to 28 U.S.C. §1367).  In

19  so doing, Plaintiffs sued this Moving Defendant Patricia Hearing ("Hearing Master Doninger"),

20  in her individual capacity as a Hearing Master for Family Court. (Compl. ¶ 6).  Plaintiffs

21  additionally named Family Court Marshals Ronald Fox, James Kenyon, and Gregory Bryant as

22  Defendants in their individual capacities.  (Compl. ¶¶ 4, 5, and 5A).  Finally, Plaintiffs named

23  Defendant Clark County as a "co-employer" (along with non-defendants the State of Nevada and

24  the Eighth Judicial District Court) of Defendants Fox, Kenyon, Bryant, and Doninger.  (Compl.

25  ¶¶ 7).

26  . . .

27  . . .

28  . . .

Law Offices of
OLSON, CANNON, GORMLEY, ANGULO & STOBERSKI
A Professional Corporation
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012    Telecopier (702) 383-0701

Plaintiffs asserted 20 causes of action in their First Amended Complaint, four (4) of which are alleged against Hearing Master Doninger. The causes of action against Hearing Master Doninger include: violation of 4th and 14th Amendment rights pursuant to 42 U.S.C. §1983 (First and Second Claims for Relief); supervisory liability pursuant to 42 U.S.C. §1983 (Third Claim for Relief); and negligent supervision under state law (Tenth Claim for Relief).

As set forth in detail below, each cause of action asserted against Hearing Master Doninger fails to state a claim upon which relief can be granted and is subject to dismissal pursuant to F.R.C.P. 12(b)(6). More specifically, both the federal and state claims are barred by law according to the doctrine of absolute immunity which attaches to the quasi-judicial acts (those duties directly related to the judicial function) which form the basis for the entirety of Plaintiffs' allegations against Hearing Master Doninger.

## II.

## FACTUAL BACKGROUND

This suit arises out of an incident occurring on August 8, 2011. At that time, Plaintiff Monica Contreras ("Contreras") appeared in Family Court with her daughter, Plaintiff Andrea Paterna ("Paterna"), for a hearing scheduled before Hearing Master Doninger. Contreras appeared as the adverse party in a requested extension of a protective order previously obtained by Contreras' ex-husband for alleged violent acts committed by Contreras. Contreras' ex-husband (the applicant) was not in attendance at the hearing. Because the applicant did not appear, Hearing Master Doninger denied the extension, dissolved the prior protective order, and concluded the hearing without incident.

According to Plaintiffs' Complaint, as Contreras was leaving the courtroom following the hearing, she was approached by Defendant Marshal Fox who directed Contreras into an anteroom of the courtroom for a drug search. (Compl. ¶ 12). While in the anteroom, Marshal Fox allegedly engaged in non-consensual improper sexual contact with Contreras and made sexually abusive and harassing requests. (Compl. ¶ 16). Contreras returned to the courtroom and informed Hearing Master Doninger of Marshal Fox's alleged behavior in the anteroom. (Compl. ¶ 17). At this time, Defendant Marshal Kenyon (Marshal Fox's supervisor) was also in the

OLSON, CANNON, GORMLEY, ANGULO & STOBERSKI
*Law Offices of*
*A Professional Corporation*
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012    Telecopier (702) 383-0701

1  courtroom. According to the Complaint, both Marshals then arrested Contreras for making false
2  statements to the Court, placed her in handcuffs, issued her a criminal citation, and directed her
3  to a holding cell in the Family Courthouse. (Compl. ¶ 19). Paterna was taken into custody by
4  Child Protective Services until her father picked her up later that day. (Compl. ¶ 22).

5  Plaintiffs' First Cause of Action alleges Marshals Fox and Kenyon subjected Contreras to
6  an unreasonable search and seizure in violation of her 4th Amendment rights. (Compl. ¶ 34).
7  The cause of action further alleges Hearing Master Doninger's "conscious disregard of Plaintiffs'
8  rights and failure to act" was a contributing cause of the unreasonable search and seizure.
9  (Compl. ¶ 35-36A). The Second Cause of Action maintains Marshals Fox, Kenyon, Bryant and
10 Hearing Master Doninger deprived Contreras and Paterna of a liberty interest "of familial
11 relationship and society" in violation of their 14th Amendment rights because Paterna was taken
12 into custody by Child Protective Services during the time Contreras was detained. (Compl. ¶ 42-
13 42A).

14 Plaintiffs' Third Cause of Action maintains Hearing Master Doninger had supervisory
15 authority and responsibility for the conduct of Marshals Fox and Kenyon and is, therefore,
16 subject to supervisory liability (pursuant to 42 U.S.C. §1983) because she "knowingly failed to
17 take actions" within such administrative supervisory which "would have prevented the alleged
18 violations of Plaintiff's and Plaintiff's daughter's rights". (Compl. ¶¶ 48-49).[1] Finally, within
19 their Tenth Cause of Action, Plaintiffs allege Hearing Master Doninger is liable under a state law
20 claim of negligent supervision. (Compl. ¶ 86-87).

___

[1] Plaintiffs' assertions that Hearing Master Doninger enjoyed any amount of authority and/or supervision over the court marshals, including Defendants Fox and Kenyon, are inherently incorrect. Unlike Eighth Judicial District Court judges, hearing masters in Family Court do not have specific marshals assigned to their courtrooms. Hearing masters are not entitled to chose nor request a particular marshal. To the contrary, different "overflow" marshals appear in the hearing master courtrooms on a daily basis. The overflow marshals have a particular Supervisor, in this matter Defendant Kenyon.

However, the absence of Hearing Master Doninger's supervisory/administrative control over the marshals is moot for purposes of the instant Motion because the actions and/or inactions complained of by Plaintiffs against Hearing Master Doninger are entirely judicial in nature (regardless of Plaintiffs' attempt to avoid immunity by describing such actions/inactions as "administrative").

OLSON, CANNON, GORMLEY, ANGULO & STOBERSKI
Law Offices of
A Professional Corporation
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012   Telecopier (702) 383-0701

1    There are no allegations that Hearing Master Doninger was involved, in any manner, with

2    Defendant Fox's allegedly improper drug search of Plaintiff which occurred outside the

3    courtroom. Further, no allegations exist that Hearing Master Doninger knew, or should have

4    known, whether the basis for Defendants Fox and Kenyon's arrest of Contreras was legitimate

5    (*i.e.* whether the statements Contreras made to the Court regarding Defendant Fox's conduct

6    were, indeed, false). Instead, Plaintiffs maintain Hearing Master Doninger's culpability lies in a

7    failure to act, in her judicial capacity, at the time of Contreras' arrest. Under these

8    circumstances, Hearing Master Doninger is entitled to absolute immunity and Plaintiffs' claims

9    against her are subject to dismissal.

## III.

## LEGAL ARGUMENT

### A.    Standard of Review for a Motion to Dismiss

A motion to dismiss tests the legal sufficiency of the claims alleged in a complaint. A claim may be properly dismissed for a lack of cognizable legal theory, absence of sufficient facts alleged, or for seeking remedies to which a plaintiff is not entitled as a matter of law. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). According to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a clam that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly* at 556.

Although the court must take all the factual allegations in a complaint as true, it is not bound to accept as true a legal conclusion couched as a factual allegation. *Caviness v. Horizon Community Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010). Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim. *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th cir. 1996). Furthermore, "[t]he Court will not assume the truth of Plaintiff's legal conclusions merely because they are cast in the

OLSON, CANNON, GORMLEY, ANGULO & STOBERSKI
*Law Offices of*
*A Professional Corporation*
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012    Telecopier (702) 383-0701

1  form of factual allegations in Plaintiff's Complaint." *Ritzer v. Gerovicap Pharmaceutical Corp*,

2  162 F.R.D. 642, 645 (D. Nev. 1995)(*citing Western Mining Council v. Watt*, 643 F.2d 618, 624

3  (9th Cir. 1981), *cert. denied*, 454 U.S. 1031 (1981)).

4       Plaintiffs in this case has brought suit pursuant to 42 U.S.C. §1983. There are two

5  elements to a §1983 claim against an individual: (1) the conduct complained of must have been

6  under the color of state law; and (2) the conduct must have subjected the plaintiff to a deprivation

7  of constitutional rights. *See Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th

8  Cir. 1984). "Conclusory allegations, unsupported by facts, [will be] rejected as insufficient to

9  state a claim under the Civil Rights Act." *Id.* (*quoting Sherman v. Yakahi*, 549 F.2d 1287, 1290

10  (9th Cir. 1977)). By the same token, "[v]ague and conclusory allegations of official participation

11  in civil rights violations are not sufficient to withstand a motion to dismiss . . . ." *Ivey v. Board

12  of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). In other words, dismissal of §1983 claims is

13  always appropriate when the specific facts alleged simply fail to support a transgression of a

14  constitutional magnitude or an act committed under color of state law.

15       Additionally, the Supreme Court has made clear that the issue of immunity should be

16  determined as early as possible in the proceedings:

17
18      [A] ruling on that issue should be made early in the proceedings so that costs and
    expenses of trial are avoided where the defense is dispositive. Qualified
    immunity is "an entitlement not to stand trial or face the other burdens of
19      litigation." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d
    411 (1985). The privilege is "an *immunity from suit* rather than a mere defense to
20      liability; and like an absolute immunity, it is effectively lost if a case is
    erroneously permitted to go to trial." *Ibid.* As a result, "we repeatedly have
21      stressed the importance of resolving immunity questions at the earliest possible
    stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116
22      L.Ed.2d 589 (1991)(per curiam).

23  *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001)(emphasis in original); *see also State of Nevada v.

24  Second Judicial District Court*, 118 Nev. 609, 615, 55 P.3d 420 (2002) ("Absolute immunity is a

25  broad grant of immunity not just from the imposition of civil damages, but also from the burdens

26  of litigation, generally.").

27  . . .

28

**B.    Hearing Master Doninger Has Absolute Immunity for All Federal Claims Against Her in Her Individual Capacity.**

At all times relevant to the claims in Plaintiffs' Amended Complaint, Hearing Master Doninger was an appointed special master in the Eighth Judicial District Court, Family Court division, and presided over the issuance of temporary and extended protective orders against domestic violence. Her appointment was authorized pursuant to N.R.S. 53, "*Masters*", which provides that the District Court, in which any action is pending, may appoint a special master therein.[2] The statute was enacted to help alleviate the workload of district court judges. Similar to a district court judge, Hearing Master Doninger is assigned a courtroom within the Family Courthouse, she wears a robe while conducting hearings, and her courtroom is equipped with a court clerk and a marshal.

The extent to which a hearing master's duties mirror those of a judge is underscored in the Advisory Committee Notes for N.R.S. 53, subsection ( c), "*Powers*", which provides:

> *The master may require the production before the master of evidence upon all matters embraced in the reference, including the production of all books, papers, vouchers, documents, and writings applicable thereto. The master may rule upon the admissibility of evidence unless otherwise directed by the order of reference and has the authority to put witnesses on oath and may examine them and may call the parties to the action and examine them upon oath. When a party so requests, the master shall make a record of the evidence offered and excluded in the same manner and subject to the same limitations as provided in Rule 43( c) and statutes for a court sitting without a jury.*

Hearing Master Doninger was appointed to aid the court in its judicial function of determining the propriety of issuing and extending protective orders in domestic violence matters. *See* Eighth Judicial District Court Rule 1.31(b)(3)(I). To this end, she performed a valuable and integral judicial function in assisting the court. Because Hearing Master Doninger was acting as an "arm of the court" and was performing "a function integral to the judicial

. . .

. . .

---

[2] The Constitution of the State of Nevada, Article 6, §6 (2)(a), provides: "The legislature may provide by law for referees in district court."

OLSON, CANNON, GORMLEY, ANGULO & STOBERSKI
*Law Offices of*
*A Professional Corporation*
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012    Telecopier (702) 383-0701

1    process" during the actions complained of within Plaintiffs' Complaint, she is shielded by the

2    doctrine of absolute immunity in this matter. *See Lythgoe v. Guinn*, 884 P.2d 1085, 1086

3    (Alaska 1994).

4         It is a matter of well-established law that judges are generally immune from suits against

5    them in their individual capacity. *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (applying judicial

6    immunity to § 1983 actions); *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991). Few doctrines were

7    more solidly established at common law than the immunity of judges from liability for damages

8    for acts committed within their judicial jurisdiction. *Bradley v. Wall*, 13 Wall. 335, 20 L.Ed. 646

9    (1872). This absolute immunity is necessary based on the special nature of the judiciary's

10   responsibilities. *See Butz v. Economou*, 438 U.S. 478, 511, 98 S.Ct. 2894 (1978). The public is

11   best served when its judicial officers are free from fear of personal consequences for acts

12   performed in their judicial capacity. *Greene v. Zank*, 158 Cal.App.3d 497, 508, 204 Cal.Rptr.

13   770 (1984).

14        Given these important public policy considerations, judges possess a "sweeping form of

15   immunity" for all acts performed that relate to the "judicial process." *Forrester v. White*, 484

16   U.S. 219, 225, 108 S.Ct. 538 (1988); *Imbler v. Pachtman*, 424 U.S. 409, 423 n.20, 96 S.Ct. 984

17   (1976). Irrespective of the judge's subjective intent, immunity insulates the judge's actions

18   except where done in the clear absence of jurisdiction. *See Stump v. Stackman*, 435 U.S. 349, 359

19   (1978). Put differently, this absolute immunity insulates judges from charges or erroneous acts

20   or irregular action, even when it is alleged that such action was driven by malice, bad faith or

21   corruption. *Forrester*, 484 U.S. at 227-28; *see also Mireles*, 502 U.S. at 11. Furthermore, the

22   absolute immunity is not pierced by allegations of judicial authority "flawed by the commission

23   of grave procedural errors." *Stump*, 435 U.S. at 359. In sum, "the judge is absolutely immune for

24   all judicial acts not performed in the clear absence of all jurisdiction, however erroneous the act

25   and however evil the motive." *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991).

26        The same purposes underlie the doctrine of quasi-judicial immunity, which precludes suit

27   against persons who perform "functions normally performed by judges, such as court-appointed

28   referees and experts." *Howard v. Drapkin*, 222 Cal.App.3d 843, 858, 271 Cal.Rptr. 893 (1990).

OLSON, CANNON, GORMLEY, ANGULO & STOBERSKI
*Law Offices of*
*A Professional Corporation*
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012   Telecopier (702) 383-0701

1    In particular, court personnel "acting as either a temporary judge or performing subordinate

2    judicial duties order by the appointing court" have been granted quasi-judicial immunity.

3    *Tagliavia v. County of Los Angeles*, 112 Cal.App.3d. 759, 763, 169 Cal.Rptr. 467 (1980).[3]

4          The court in *Howard* summarized the purpose for shielding quasi-judicial acts with

5    absolute immunity by holding:

6
7          *"[w]e believe it appropriate that these 'nonjudicial persons who fulfill quasi-judicial
           functions intimately related to the judicial process' should be given absolute immunity for
           damage claims arising from their performance of duties in connection with the judicial
8          process. Without such immunity, such persons will be reluctant to accept court
           appointments or provide work product for the courts' use. Additionally, the threat of
9          civil liability may affect the manner in which they perform their jobs.*

10   *Howard*, at 858 (internal citations omitted).

11         Both Nevada and federal law are consistent with their broad application of the quasi-

12   judicial immunity rule to all persons connected with the judicial process.   In *Butz v. Economou*,

13   438 U.S. at 513, the court extended the application of absolute immunity to a federal

14   administrative hearings examiner because: "[t]he conflicts which federal hearing examiners seek

15   to resolve are every bit as fractious as those which come to court... Moreover, federal

16   administrative law requires that agency adjudication contain many of the same safeguards as are

17   available in the judicial process." *Id.* The *Butz* court emphasized the similarity between the

18   proceedings presided over by the hearings examiner and those presided over by a judge (*i.e.* the

19   hearing examiner proceedings are adversary in nature, they are conducted before a trier of fact

20   insulated from political influence, a party is entitled to present his case by oral or documentary

21   evidence, there is a record of the proceedings, and the parties are entitled to know the findings

22   and conclusions on all issues). *Id.* "There can be little doubt that the role of the modern federal

23   hearing examiner or administrative law judge within this framework is 'functionally comparable'

24   to that of a judge." *Id.* (emphasis added).

25

26         [3] *See also Taylor v. Mitzel*, 82 Cal.App.3d 665, 670-71, 147 Cal.Rptr. 323 (1978) (application

27   of absolute immunity to claims against administrative law hearing officer); *Baar v. Tigerman*,
     140 Cal.App.3d 979, 985, 211 Cal.Rptr. 713 (1983) (application of absolute immunity to claims

28   against an arbitrator).

OLSON, CANNON, GORMLEY, ANGULO & STOBERSKI
*Law Offices of*
*A Professional Corporation*
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012   Telecopier (702) 383-0701

1    According to the Ninth Circuit Court of Appeals, the determination of whether an

2  individual is entitled to absolute immunity is founded on a "functional approach" which "looks to

3  the nature of the function performed, not the identity of the [individual] who performed it."

4  *Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir 1999) (*quoting Buckley v. Fitzsimmons*, 509 U.S.

5  259, 269 (1993)).  The "functional approach" takes into consideration factors including:

6          ●       whether the individual is performing many of the same functions as a judicial
                officer;
7

8          ●       whether there are procedural safeguards in place similar to a traditional court;

9
          ●       whether the process or proceeding is adversarial;
10

11          ●       the ability to correct errors on appeal; and

12          ●       whether there are protective measures to ensure the constitutionality of the
                individual's conduct and to guard against political influences.
13

*Id.*
14

15    In the instant matter, Hearing Master Doninger presided over adversary matters involving

16  the issuance and extension of domestic violence protective orders.  She acted as the trier of fact

17  and the parties appearing before her were entitled to present evidence during hearings (pursuant

18  to the traditional safeguards in place regarding the admission of evidence).  Hearing Master

19  Doninger's findings were reduced to a Recommendation which must be signed by a district court

20  judge.  Either party may file an objection to the Recommendation with the district court in an

21  attempt to correct errors on appeal.  Clearly, Hearing Master Doninger's role was "functionally

22  comparable" to that of a judge.

23    In *Foster v. Washoe County*, 114 Nev. 936, 964 P.2d 788 (1998), the court dismissed the

24  plaintiff's claims against employees of the Court Appointed Special Advocate ("CASA") under

25  the doctrine of quasi-judicial immunity.  The *Foster* court noted that the Nevada Attorney

26  General specifically stated that CASA and its volunteers "may be considered an arm of the

27  . . .

28  . . .

court." *Id.* at 793, *citing* 91-7 Op. Att'y Gen. 7 (1991). The court concluded: "CASA and its volunteers are entitled to the absolute immunity which extends to all persons who are an integral part of the judicial process." *Id.* (*citing Briscoe v. LaHue*, 460 U.S. 325, 335 (1983)).

The Nevada Supreme Court also applied the doctrine of quasi-judicial immunity to a court-appointed psychologist in *Duff v. Lewis*, 114 Nev. 564, 958 P.2d 82 (1998). In affirming the dismissal of the plaintiff's claims, the court held: "[t]he court-appointed psychologist performs a valuable and integral function in assisting courts in evaluating cases such as the one now before us." *Id.* at 87.

Similarly, in *Briscoe v. LaHue*, 460 U.S. 325 (1983), the United States Supreme Court applied quasi-judicial immunity to dismiss a §1983 action against a police officer witness. The court held:

> *In short, the common law provided absolute immunity from subsequent damages liability* <u>*for all persons – governmental or otherwise – who were integral parts of the judicial*</u> <u>*process.*</u> *It is equally clear that §1983 does not authorize a damages claim against private witnesses on the one had, or against judges or prosecutors in the performance of their respective duties on the other.*

*Id.* at 335 (emphasis added).[4] The Ninth Circuit Court of Appeals held similarly in *Mishler v. Clift*, 191 F.3d 998, 1007 (9th Cir. 1999) by concluding that individual members of the Nevada Board of Medical Examiners were entitled to absolute immunity for their quasi-judicial acts.[5]

---

[4] *See also Marvin v. Fitch*, 232 P.3d 425, 126, Nev. Adv. Op. 18 (2010) wherein the Nevada Supreme Court dismissed the plaintiff's §1983 civil rights claim against members of the State Board of Equalization based upon application of the doctrine of absolute immunity and a finding that the Board members' actions constituted quasi-judicial functions.

[5] Absolute immunity for activities intimately associated with the judicial process has been widely adopted in other Circuits as well. *See Frazier v. Bailey*, 957 F.2d 920, 931 (1st Cir. 1992) (public officers possess absolute immunity quasi-judicial activities); *Gardner v. Parson*, 874 F.2d 131 (3rd Cir. 1989) (absolute immunity applies when conduct is an integral part of the judicial process); *Vosburg v. Dept. of Social Services*, 884 F.2d 133, 135 (4th Cir. 1989) (absolute immunity applies to "preparing and filing the removal petition as well as their conduct in caring for [child] once the court had awarded custody of the child to DSS"); and *Millspaugh v. County Dept. of Public Welfare*, 937 F.2d 1172 (7th Cir. 1991), *cert. denied* 502 U.S. 1004 (1991)(absolute immunity for social worker's acts relating to judicial protection proceeding).

OLSON, CANNON, GORMLEY, ANGULO & STOBERSKI
*Law Offices of*
*A Professional Corporation*
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012    Telecopier (702) 383-0701

OLSON, CANNON, GORMLEY, ANGULO & STOBERSKI
A Professional Corporation
Law Offices of
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012   Telecopier (702) 383-0701

1    In the instant case, Plaintiffs allege Hearing Master Doninger improvidently failed to

2  exercise her judicial duty and intervene in Contreras' arrest.  The bare allegations of Plaintiffs'

3  Complaint alone result in the application of judicial immunity because the entirety of Plaintiffs'

4  allegations arise from events occurring in Hearing Master Doninger's courtroom while she was

5  acting in her judicial capacity.

6    It is anticipated that Plaintiffs will challenge Hearing Master Doninger's right to absolute

7  immunity based on a flawed assertion that Hearing Master Doninger's actions/inactions were

8  "administrative", as opposed to judicial, in nature.  Any such argument is without merit.

9  Plaintiffs cannot refute that Hearing Master Doninger was acting as an "arm of the court" and

10  was performing "a function integral to the judicial process" during the actions complained of

11  within Plaintiffs' Amended Complaint.  Nor can Plaintiffs controvert the fact Hearing Master

12  Doninger was performing functions normally performed by judges.

13    Contreras was a *litigant* appearing before Hearing Master Doninger.  Contreras was not

14  an employee of Hearing Master Doninger, nor did she otherwise fall within the purview of any

15  administrative authority of Hearing Master Doninger.  The sole interaction between Contreras

16  and Hearing Master Doninger occurred as between a litigant and a judge.  Indeed, the precise

17  action Plaintiffs allege should have occurred, *i.e.* Hearing Master Doninger should have

18  intervened during Contreras' arrest, could have only occurred as a judicial action. While it is

19  hornbook law that a judge is immune from suit for ordering a litigant to be taken into custody,

20  the inverse must also be true: a judge is immune from an alleged failure to stop someone from

21  being taken into custody.

22    Because the entirely of Plaintiffs' allegations against Hearing Master Doninger rest in

23  actions (or inactions) taken in Hearing Master Doninger's quasi-judicial capacity, this is plainly a

24  case where immunity attaches and dismissal of Plaintiffs' First, Second, and Third Causes of

25  Action against Hearing Master Doninger is warranted.

26  . . .

27  . . .

28  . . .

**C.** **Nevada Recognizes Absolute Judicial Immunity for the State Law Claims Pled Against Hearing Master Doninger.**

Hearing Master Doninger is also immune from all state causes of action by virtue of the doctrine of absolute judicial immunity. "[T]he doctrine of judicial immunity arose out of the common law to protect the integrity and smooth operation of the judicial systems, both State and Federal." *Mirin v. Justice of the Supreme Court of Nevada*, 415 F. Supp. 1178, 1190 (D. Nev. 1976). The Nevada Supreme Court has held its state-court judges have immunity from state law claims just as they do for federal causes of action. In *State v. Second Judicial District Court*, 118 Nev. 609, 55 P.3d 420 (2003), the Court stated:

> Absolute immunity is a broad grant of immunity not just from the imposition of civil damages, but also from the burdens of litigation, generally. Judicial immunity originates from the common-law protection of judicial participants which formed a "'cluster of immunities protecting the various participants in judge-supervised trials'" that stemmed "'from the characteristics of the judicial process.'" . . . Indeed, a grant of absolute immunity applies even when a judicial officer has been accused of acting maliciously and corruptly.

*Id.* at 615, 55 P.3d at 423-24 (internal citations omitted).

As such, the same immunity attaches to Hearing Master Doninger's alleged conduct regardless of whether Plaintiffs cast these allegations in the form of federal causes of action or state causes of action. The Tenth Cause of Action entitled "negligent supervision" is legally deficient for the same reasons the §1983 civil rights causes of action. Dismissal is thus warranted for any claims asserted under supplemental jurisdiction against Hearing Master Doninger.

. . .

. . .

. . .

. . .

. . .

. . .

# III.

## CONCLUSION

IN ACCORDANCE WITH THE FOREGOING, Defendant Patricia Doninger

respectfully moves for dismissal of all Plaintiffs' claims made against her in Plaintiffs' First

Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

RESPECTFULLY SUBMITTED this 17th day of January 2014.

OLSON, CANNON, GORMLEY
ANGULO & STOBERSKI


By:  /s/ Walter R. Cannon
WALTER R. CANNON
Nevada Bar No.  001505
9950 W. Cheyenne Avenue
Las Vegas, Nevada 89129
Attorneys for Defendant
PATRICIA DONINGER

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 17th day of January 2014, I served the above

**DEFENDANT PATRICIA DONINGER'S MOTION TO DISMISS** through the CM/ECF

system of the United States District Court for the District of Nevada (or, if necessary, by U.S.

Mail, first class, postage pre-paid), upon the following:

> Ross C. Goodman, Esq.
> Goodman Law Group, P.C.
> 520 So. Fourth Street, 2nd Floor
> Las Vegas, Nevada 89101
> Attorney for Plaintiffs

> Tracy A. Eglet, Esq.
> Bradley J. Myers, Esq.
> Eglet Wall Christiansen
> 400 South Seventh Street, Box 1, Suite 400
> Las Vegas, Nevada 89101
> Attorneys for Plaintiffs

> Eva Garcia-Mendoza, Esq.
> 501 South Seventh Street
> Las Vegas, Nevada 89101
> Attorney for Defendant Ronald D. Fox

> Lyssa S. Anderson, Esq.
> Kaempfer Crowell Renshaw Gronauer & Fiorentino
> 8345 W. Sunset Road, Suite 250
> Las Vegas, Nevada 89113
> Attorney for Defendants James Kenyon
> and Gregory Bryant

. . .

. . .

. . .

. . .

Robert W. Freeman, Esq.
Lewis Brisbois Bisgaard & Smith, LLP
6385 W. Rainbow Blvd., #600
Las Vegas, Nevada 89118
Attorney for Defendant Clark County


/s/   Nanette D. Langenderfer
An Employee of OLSON, CANNON, GORMLEY
ANGULO & STOBERSKI